```
 1  Howard Holderness
    MORGAN, LEWIS & BOCKIUS LLP
 2  CA Bar No. 169814
    1 Market Street, Spear Tower, 25th Floor
 3  San Francisco, CA 94105
    (415) 442-1000 (Telephone)
 4  (415) 442-1001 (Facsimile)

 5
    Charles L. Babcock
 6  JACKSON WALKER L.L.P.
    TX Bar No. 01479500
 7  1401 McKinney, Suite 1900
    Houston, Texas 77010
 8  (Application for Pro Hac Vice Admission Pending.)
    (713) 752-4200 (Telephone)
 9  (713) 752-4221 (Facsimile)

10
    George L. McWilliams
11  LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C.
    TX Bar No. 13877000; AR Bar No. 68078
12  406 Walnut, P.O. Box 58
    Texarkana, ARK-TX 75504-0058
13  (Application for Pro Hac Vice Admission Pending.)
    (903) 277-0098 (Telephone)
14  (870) 773-2967 (Facsimile)

15
    Attorneys for Movants
16  CISCO SYSTEMS, INC., RICHARD FRENKEL,
    MALLUN YEN, JOHN NOH & MARK CHANDLER
17
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC M. ALBRITTON,<br>    Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN, & JOHN NOH,<br>    Defendants. | Miscellaneous Action No.<br>CV 5:08-mc-80153-JW (HRL)<br><br>**DEFENDANTS CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN, JOHN NOH & NON-PARTY MARK CHANDLER'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA; MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES** |

**TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OR POINTS AND AUTHORITIES ........................................................ 2

I. STATEMENT OF ISSUES .......................................................................................... 2

II. INTRODUCTION ........................................................................................................ 2

III. STATEMENT OF FACTS ........................................................................................... 3

    A. THE PARTIES AND UNDERLYING LITIGATION ..................................... 3

    B. GOOGLE ......................................................................................................... 4

    C. THE SUBPOENA ........................................................................................... 4

IV. ARGUMENT ............................................................................................................... 5

    A. Movants Have Standing .................................................................................. 5

    B. The Subpoena Should be Quashed Because the SCA Bars Google from Producing the Communications Sought in the Subpoena ................................ 6

    C. The Subpoena Should be Quashed Because it Requires Disclosure of Privileged or Protected Material, and No Exemption or Waiver Applies ........ 7

        1. The Attorney-Client Privilege and the Work Product Doctrine ........... 8

        2. The Reporter's Privilege and California Shield Law ............................ 8

    D. The Subpoena Should be Quashed Because it is Unduly Burdensome .......... 12

V. CONCLUSION ........................................................................................................... 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Baker v. F&F Investment,*
   470 F.2d 778 (2d Cir. 1972).................................................................................. 10

*Branzburg v. Hayes,*
   408 U.S. 665 (1972)................................................................................................ 9, 10

*Brown v. Braddick,*
   595 F.2d 961 (5th Cir. 1979).................................................................................... 5

*Clyburn v. New World Communications, Inc.,*
   903 F.2d 29 (D.C. Cir. 1990).................................................................................... 9

*Federal Trade Commission v. Netscape Communications Corp.,*
   196 F.R.D. 559 (N.D. Cal. 2000).............................................................................. 6

*In re Grand Jury Subpoenas,*
   438 F. Supp. 2d 1111 (N.D. Cal. 2006).................................................................... 11

*Herbert v. Lando,*
   441 U.S. 153 (1979).................................................................................................. 9

*Jaffee v. Redmond,*
   518 U.S. 1 (1996)...................................................................................................... 11

*LaRouche v. National Broadcasting Co.,*
   780 F.2d 1134 (4th Cir. 1986)................................................................................... 9

*Lopez v. First Union National Bank of Fla.,*
   129 F.3d 1186 (11th Cir. 1997)................................................................................. 6

*Miller v. Transamerican Press, Inc.,*
   621 F.2d 721 (5th Cir.)............................................................................................. 9

*New York Times v. Gonzalez,*
   382 F. Supp. 2d 457 (S.D.N.Y. 2005), *vacated on other grounds,* 459 F.3d
   160, 168 (2d Cir. 2006)............................................................................................. 11

*In re Petroleum Products Antitrust Litigation,*
   680 F.2d 5 (2d Cir. 1982).......................................................................................... 10

*Quinby v. WestLB AG,*
   No. 04 Civ. 7406 WHP HBP, 2006 WL 59521 (S.D.N.Y. Jan. 11, 2006)............... 5

*Shoen v. Shoen,*
   5 F.3d 1289 (9th Cir. 1993)....................................................................................... 9, 10

*Silkwood v. Kerr-McGee Corp.,*
   563 F.2d 433 (10th Cir. 1977)................................................................................... 9

*Springbook Lenders v. Northwestern National Insurance Co.,*
   121 F.R.D. 679 (N.D. Cal. 1988).............................................................................. 5

*In re Subpoena Duces Tecum to AOL, LLC*,
   550 F. Supp. 2d 606 (E.D. Va. 2008) .................................................................... 7

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ........................................................................ 6, 12

*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588 (D. Kan. 2003) ........................................................................... 5

*Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*,
   228 F.R.D. 111 (D. Conn. 2005) ........................................................................ 12

*United States v. Burk*,
   700 F.2d 70 (2nd Cir. 1983), *cert. denied*, 464 U.S. 816 (1983) ........................ 9

*United States v. Cuthbertson*,
   630 F.2d 139 (3d Cir. 1980), *cert. denied*, 449 U.S 1126 (1981) ....................... 9

*United States v. LaRouche Campaign*,
   841 F.2d 1176 (1st Cir. 1988) ............................................................................. 9

*In re Williams*,
   766 F. Supp. 358 (W.D. Pa. 1991), *aff'd*, 963 F.2d 567 (3d Cir. 1992) (en banc) ................................................................................................................. 11

**STATE CASES**

*Miller v. Superior Court*,
   21 Cal. 4th 883 (1999) ...................................................................................... 10

*Mitchell v. Superior Court*,
   37 Cal. 3d 268 (1984) ....................................................................................... 10

*New York Times Co. v. Superior Court*,
   51 Cal. 3d 453 (1990) ....................................................................................... 11

*O'Grady v. Superior Court*,
   139 Cal. App. 4th 1423 (2006) ........................................................ 7, 9, 11, 12

**FEDERAL STATUTES**

18 U.S.C. §§ 2701-2712 ............................................................................................ 2

18 U.S.C. § 2510(15) ................................................................................................ 6

18 U.S.C. § 2510(17) ................................................................................................ 6

18 U.S.C. § 2702(a)(1) .............................................................................................. 6

Fed. R. Civ. P. 26(b)(1) ........................................................................................... 12

Fed. R. Civ. P. 45(c)(3) ........................................................................................... 12

Fed. R. Civ. P. 45(c)(3)(A) .................................................................................. 3, 5, 7, 8, 9, 11, 12, 13
Fed. R. Evid. 501 ............................................................................................................... 11
Fed. R. Civ. P. 45 ................................................................................................................ 1

**STATE STATUTES**

Cal. Evid. Code § 1070(a) .............................................................................................. 3, 11
Cal. Const. Art. I § 2 ........................................................................................................... 3
Cal. Const. Art. I § 2(b) ..................................................................................................... 11
Cal. Code Civ. P. § 1986.1 ............................................................................................ 3, 11

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE THAT on _____, 2008, at \_\_\_\_:\_\_\_\_, or as soon thereafter as this case may be heard, in the courtroom of the Honorable _____, United States District Court, Northern District of California, Cisco Systems, Inc., Richard Frenkel, Mallun Yen, John Noh, and Mark Chandler (collectively, "Movants") hereby move pursuant to Rule 45 of the Federal Rules of Civil Procedure to quash the subpoena issued to Non-Party Google, Inc. ("Google") by Eric M. Albritton ("Albritton") in the above-titled case pending in federal court in Texas (the "Texas Action"), and for a protective order.

      Specifically, Movants respectfully request an Order that the subpoena be quashed in its entirety. In the alternative, Movants request that a protective order be entered which provides that: (i) Google shall not be required to and will not produce any material protected by the attorney-client privilege, the work product doctrine, the Reporter's Privilege, and the California Shield Law; (ii) Google shall be required to produce only material relevant to, or reasonably calculated to lead to the discovery of admissible evidence in, the Texas Action; and (iii) Albritton's counsel shall take appropriate steps to protect the confidentiality of any material produced by Google, in accordance with the Protective Order entered in the Texas Action.

      Movants' motion is based on this notice of motion; the following memorandum of points and authorities; all supporting declarations; any reply filed in support of this motion; all other papers filed and proceedings had in this action; oral argument of counsel; and such other matters as the Court may consider.


**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **STATEMENT OF ISSUES**

1. Whether Google, a non-party, should produce e-mail communications and documents that are protected from disclosure by the federal Stored Communications Act, 18 U.S.C. §§ 2701-2712, the attorney-client privilege, the work product doctrine, the Reporter's Privilege, and the California Shield Law.

2. Whether Google, a non-party, should produce e-mail communications and documents pursuant to requests that are overly broad and not properly limited to relevant and non-privileged information.

II. **INTRODUCTION**

Albritton is the plaintiff and Cisco Systems, Inc. ("Cisco"), Richard Frenkel ("Frenkel"), Mallun Yen ("Yen"), and John Noh ("Noh") (collectively, the "Defendants") are the defendants in the Texas Action, pending in the United States District Court for the Eastern District of Texas, Tyler Division, Civil Action No. 6:08-CV-89. The Texas Action involves claims by Albritton that Frenkel, a former employee of Cisco, published defamatory statements about Albritton on Frenkel's Patent Troll Tracker website (the "PTT"), a news-oriented website that reported on news about intellectual property litigation and advocated reform of the patent law system. (Declaration of Charles L. Babcock ("Babcock Decl.") ¶ 4; Declaration of Richard Frenkel ("Frenkel Decl.") ¶¶ 3-5.) On or about August 8, 2008, Albritton issued a subpoena from this Court (the "Subpoena"), calling for the production of documents from Google, a non-party that resides in this federal district. (Babcock Decl. ¶ 3; a copy of the Subpoena is attached as Exhibit A-1 to the Babcock Decl.)

The Subpoena should be quashed in its entirety because the federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, prohibits Google from disclosing the communications sought by Albritton in the Subpoena. Under the plain terms of the SCA, Albritton's efforts to obtain such communications must be directed to the parties to the communications and not to Google, and Albritton cannot use the Subpoena to circumvent the limits on civil discovery and invade the attorney-client privilege, the work product doctrine,

the Reporter's Privilege, and the California Shield Law.

In addition, the Subpoena should be quashed because it seeks to compel Google to produce privileged, attorney-client communications and attorney work product (privileges Defendants own and assert). The Subpoena also violates the First Amendment to the United States Constitution, the federal common law, and the California Shield Law (CAL. EVID. CODE § 1070; CALIFORNIA CONST. ART. I § 2; and CALIFORNIA CODE OF CIVIL PROCEDURE § 1986.1), because it calls for material used by Frenkel on the PTT and background on the PTT itself. Moreover, the Subpoena is overly broad and not properly limited to relevant information and therefore is unduly burdensome. Thus, the Subpoena should be quashed. FED. R. CIV. P. 45(c)(3)(A) (providing that a subpoena must be quashed if it requires disclosure of privileged or protected material or subjects a person to undue burden).

Movants seek an order from the Court quashing the Subpoena, or in the alternative, the entry of a protective order as outlined above.

### III. STATEMENT OF FACTS

#### A. THE PARTIES AND UNDERLYING LITIGATION

Starting in May 2007, Frenkel began publishing the PTT to report on issues of interest to the patent community and the general public. (Frenkel Decl. ¶ 3.) In the Texas Action, Albritton sued Cisco and Frenkel, and later Yen and Noh,[1] over an October 18, 2007, PTT posting that Albritton claims to be defamatory. (Babcock Decl. ¶ 4.) The PTT posting at issue concerned a lawsuit filed on behalf of ESN, LLC, by Albritton in U.S. District Court for the Eastern District of Texas (the "ESN Action"). (Frenkel Decl. ¶ 5.) One of the defendants in the ESN Action was Cisco. (*Id.*)

Frenkel, Yen, and Chandler are current or former attorneys for Cisco. (Declaration of William Friedman ("Friedman Decl.") ¶ 3.) Noh is a former Senior Public Relations Manager, Corporate Communications for Cisco who regularly assisted with litigation matters while

---

[1] Yen and Noh, both California residents, did not write or publish the PTT and have moved to dismiss the complaint against them for lack of personal jurisdiction. That motion is pending.

employed by Cisco. (*Id.*) As Cisco employees, all of the individual Movants communicated via e-mail with inside and outside counsel for Cisco regarding legal advice sought on behalf of Cisco in the Texas Action, the ESN Action, and/or unrelated litigation. (*Id.* at ¶ 4.) Some of these e-mails may have been sent or received on e-mail accounts maintained by Google. (*Id.* at ¶ 2.)

Dennis Crouch ("Crouch") is the author of www.patentlyo.com ("Patently O"). Crouch is not a party to this motion.

### B. GOOGLE

Google operates a website that provides services to millions of people. Google allows registered users to sign up for e-mail service with Google's e-mail service, Gmail. The user selects a permanent e-mail address for a Gmail account, which he or she can access through any computer connected to the Internet. Through the Gmail service, the user is able to send and receive e-mail messages from all over the world.

### C. THE SUBPOENA

Albritton apparently has not yet served the Subpoena on Google because the attached "Proof of Service" and "Declaration of Server" forms are blank. Nevertheless, the Subpoena demands that Google produce documents by September 5, 2008 at the office of Albritton's counsel in Henderson, Texas. (Exh. A-1.)

The Subpoena calls for Google to produce the following: (1) all communications sent to or received from Frenkel, Crouch, Yen, Noh, Chandler, and Cisco regarding Albritton, the ESN Action, and certain postings to the PTT (Request No. 1); (2) all communications with the PTT and Patently O regarding Albritton, the ESN Action, and certain postings to the PTT (Request No. 2); (3) all documents relating to "user searches of the internet," the PTT, and Patently O regarding Albritton, the ESN Action, and certain postings to the PTT, "including documents reflecting the number of such searches conducted between October 16, 2007 and March 1, 2008" (Request No. 3); and (4) all documents relating to "the establishment, creation, maintenance and financial support for" the PTT and Patently O (Request No. 4). (Exh. A-1.)

## IV. ARGUMENT

A court must quash a subpoena if the subpoena (1) requires disclosure of privileged or protected material and no exception or waiver applies, or (2) subjects a person to undue burden. FED. R. CIV. P. 45(c)(3)(A). Because the Subpoena fails to comply with Rule 45, as demonstrated below, it must be quashed. *Id.*

### A. Movants Have Standing.

As an initial matter, Movants have standing to challenge the Subpoena because they have a "personal right or privilege" with regard to some or all of the materials requested by Albritton. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.") (internal citations omitted); *see also Springbook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988) (noting that parties have standing to challenge non-party subpoenas).

By way of example only, Subpoena Request No. 1 calls for production of all communications sent to or received from Movants regarding Albritton, the ESN Action, and certain postings to the PTT. On its face, this request (as well as others) calls for disclosure of e-mail communications sent or received by Movants on their private e-mail accounts maintained by Google. Movants have a substantial interest in the confidentiality of their e-mail communications; thus, Movants have standing to file a motion to quash. *See Quinby v. WestLB AG*, No. 04 Civ. 7406 WHP HBP, 2006 WL 59521, at *1 (S.D.N.Y. Jan. 11, 2006) (quashing subpoena served on e-mail service providers Time Warner Cable and Road Runner Corp. based on arguments presented in e-mail account holder's motion to quash) (a copy of this unpublished opinion is attached as Exhibit A-2 to the Babcock Decl.); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72 (9th Cir. 2004) (affirming lower court's order quashing a subpoena served on e-mail service provider NetGate because of e-mail account holders' "legitimate interest in the confidentiality of communications in electronic storage").

Furthermore, Movants have standing to challenge the Subpoena because it seeks material protected by the attorney-client privilege, the work product doctrine, the Reporter's Privilege, and the California Shield Law. Indeed, the Subpoena seeks communications to or from Frenkel and Yen, parties to the Texas Action and current or former Cisco attorneys; Mark Chandler, current Cisco attorney; and John Noh, a former Cisco employee who regularly assisted with litigation while at Cisco. (Friedman Decl. ¶ 3.) The communications sought concern issues in litigation in the Texas Action and the ESN Action. Also, the Subpoena seeks communications relating to material published on Frenkel's PTT, which is at issue in the Texas Action. As discussed below, Google's production of such communications would invade the attorney-client privilege, the work product doctrine, the Reporter's Privilege, and the California Shield Law, and therefore, Movants have standing to object to the Subpoena.

**B.   The Subpoena Should be Quashed Because the SCA Bars Google from Producing the Communications Sought in the Subpoena**

The SCA is a criminal statute that governs the production of records from electronic communication providers such as Google. *Federal Trade Commission v. Netscape Communications Corp.*, 196 F.R.D. 559, 560 (N.D. Cal. 2000). Congress enacted the SCA in 1986 to "clarify[y] the existence of privacy rights in electronic communications ...." *Lopez v. First Union Nat. Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997). With regard to providers of e-mail services to the public, the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "Electronic storage" means "temporary, intermediate storage ... incidental to the electronic transmission thereof," or "storage ... for purposes of backup protection ...." 18 U.S.C. § 2510(17). E-mail messages in electronic storage on an electronic communication service provider's system are protected under the SCA. *Theofel*, 359 F.3d at 1074, 1076

(holding that e-mail service provider served with civil subpoena seeking e-mail messages of account holder had a "legal obligation not to disclose such messages to third parties").

In enacting the SCA, Congress chose to require that contents of e-mail communications be requested directly from the account holder, absent certain exceptions. *See O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006) ("[I]t would be far from irrational for Congress to conclude that one seeking disclosure of the contents of email, like one seeking old-fashioned written correspondence, should direct his or her effort to the parties to the communication and not to a third party who served only as a medium and neutral repository for the message."). None of those exceptions apply here. Furthermore, there is no exception for documents sought pursuant to a civil subpoena, unless the requesting party is the addressee or intended recipient of the communication, which is not the case here. *See O'Grady*, 139 Cal. App. 4th at 1440-48 (citing the SCA's lengthy list of exceptions and holding that there is no exception for civil discovery). Thus, the SCA prohibits disclosure of the electronic communications sought by Albritton in the Subpoena. *See id.*; *see also In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) (quashing subpoena issued to e-mail service provider AOL because the "the statutory language of the [SCA] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas.").

As a provider of electronic communication services to the public, Google's conduct is governed by the SCA, and the plain terms of the SCA prohibit Google from producing the contents of e-mail communications in response to the Subpoena. Accordingly, the Subpoena should be quashed because it requires Google to produce the contents of e-mail communications in violation of the SCA.

C. <u>The Subpoena Should be Quashed Because it Requires Disclosure of Privileged or Protected Material, and No Exemption or Waiver Applies.</u>

A court must quash a subpoena if the subpoena requires disclosure of privileged or protected material and no exception or waiver applies. FED. R. CIV. P. 45(c)(3)(A)(iii). Because the Subpoena seeks to invade the attorney-client privilege, the work product doctrine,

and the Reporter's Privilege, it must be quashed. *Id.*

### 1. The Attorney-Client Privilege and the Work Product Doctrine

The Subpoena seeks communications and documents created or received by Cisco's legal counsel (Frenkel, Yen, and Chandler) and a Senior Public Relations Manager (Noh) who regularly provided, sought, and communicated about legal services on Cisco's behalf. Indeed, all of the individual Movants engaged in confidential, e-mail communications with inside and outside counsel for Cisco regarding the Texas Action, the ESN Action, and/or unrelated litigation. (Friedman Decl. ¶ 4.) Some of these communications may have been sent or received on e-mail accounts maintained by Google. (*Id.* at ¶ 2.) The Subpoena demands that Google produce the contents of these communications and documents to Albritton. (*See* Exh. A-1, Request Nos. 1-4.) By doing so, Google would reveal information that is protected by Defendants' attorney-client privilege, a privilege the Defendants have not waived. (Friedman Decl. ¶ 5.)

Moreover, the Subpoena calls for production of documents that may contain the impressions, opinions, conclusions, legal theories, and research prepared by Defendants or their representatives for the purpose of protecting Defendants' legal rights in litigation or in anticipation of litigation. (*Id.* at ¶ 6.) Accordingly, the Subpoena seeks disclosure of material protected by the work product doctrine, a protection that has not been waived. (*Id.*)

Albritton has not and cannot explain — much less prove — how the communications and documents sought by the Subpoena are exempt from the protections afforded to Defendants by the attorney-client privilege and the work product doctrine, or how such protections were waived. It is clear that Albritton is attempting to use the Subpoena to circumvent the attorney-client privilege and the work product doctrine. The Court must quash the subpoena because it "requires disclosure of privileged or other protected material, [and] no exemption or waiver applies." FED. R. CIV. P. 45(c)(3)(A)(iii).

### 2. The Reporter's Privilege and California Shield Law

The Subpoena also seeks to compel the production of communications and documents regarding sources and unpublished information Frenkel used to report news about intellectual

1  property litigation on the PTT. The free press and speech protections of the First Amendment
2  to the United States Constitution, the common law Reporter's Privilege, and the California
3  Shield Law protect reporters such as Frenkel from such compelled disclosure of confidential
4  sources and unpublished material.

5  As an initial matter, Frenkel properly asserts the Reporter's Privilege and protection
6  under the California Shield Law because he is and was a reporter engaged in newsgathering
7  activities for the purpose of reporting on news about intellectual property litigation on his
8  website. (Frenkel Decl. ¶¶ 3-4, 7); *see O'Grady*, 139 Cal. App. 4th at 1466, 1468 (holding that
9  the California Shield Law and the Reporter's Privilege doctrine apply to authors of news-
10 oriented websites). Because Albritton cannot demonstrate that an exemption or waiver applies
11 to these two well-established privileges and protections, the Subpoena must be quashed. FED.
12 R. CIV. P. 45(c)(3)(A)(iii).

13 <u>The First Amendment</u>. In *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972), the United
14 States Supreme Court recognized that the newsgathering process and the editorial process are
15 entitled to protection under the First Amendment. "Without some protection for seeking out
16 the news, freedom of the press could be eviscerated." *Branzburg*, 408 U.S. at 681. Courts
17 have subsequently held that "[s]ociety's interest in protecting the integrity of the
18 newsgathering process, and in insuring the free flow of information to the public is an interest
19 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed
20 in the administration of justice.'" *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting
21 *Herbert v. Lando*, 441 U.S. 153, 183 (1979) (Brennan, J. dissenting)). Courts repeatedly have
22 acknowledged the chilling effect and resulting self-censorship that discovery of a reporter's
23 unpublished information would have on the gathering and reporting of news. Consequently,
24 eight federal circuits have held that the First Amendment protections for the newsgathering
25 process rise to a level of a qualified privilege in favor of journalists when faced with a
26 subpoena seeking discovery of confidential sources or unpublished information.[2]

---

[2]*See, e.g., Clyburn v. New World Communications, Inc.*, 903 F.2d 29 (D.C. Cir. 1990); *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988); *LaRouche v. National*

1    Courts since *Branzburg v. Hayes* have found on such a consistent basis that a qualified
2    privilege exists for reporters that such a privilege must certainly exist as a matter of state and
3    federal common law. Indeed, the Supreme Court of California has recognized a qualified First
4    Amendment privilege for reporters to prevent disclosure of their confidential sources and other
5    unpublished information. *Mitchell v. Superior Court*, 37 Cal. 3d 268, 279 (1984); *Miller v.
6    Superior Court*, 21 Cal. 4th 883, 899 (1999). While recognizing the judicial policy "favoring
7    full disclosure of relevant evidence," the *Mitchell* court found that in civil cases, such as the
8    one before this Court, "courts must recognize that the public interest in a non-disclosure of
9    journalists' confidential news sources will often be weightier than the private interest in
10   compelled disclosure." *Id.* at 276-7 (quoting *Baker v. F&F Investment*, 470 F.2d 778, 784-5
11   (2d Cir. 1972)).

12   The privilege is so well-established that the Ninth Circuit, in holding that a reporter's
13   newsgathering activities were entitled to protection regardless of whether there had been a
14   promise of confidentiality, concluded that the "body of circuit case law and scholarly authority
15   [is] so persuasive that we think it unnecessary to discuss the question further." *Shoen*, 5 F.3d
16   at 1295.

17   Thus, before a Subpoena can compel disclosure of a reporter's confidential sources and
18   unpublished material, there must be a showing that (1) the information sought is highly
19   material and relevant to the inquiry at hand; (2) there is a compelling need for the information;
20   and (3) the information is not obtainable from other available sources. *See, e.g., Shoen*, 5 F.3d
21   at 1296; *In re Petroleum Prods. Antitrust Litigation*, 680 F.2d 5, 7 (2d Cir. 1982) (per curiam),
22   *cert denied*, 459 U.S. 909 (1982).

23   Albritton has not, and cannot, make such a showing in this case. First, Albritton has
24   not explained – much less proven – how the information sought by the Subpoena is "highly

25   *Broadcasting Co.*, 780 F.2d 1134 (4th Cir. 1986), *cert denied*, 479 U.S. 818 (1986); *United
26   States v. Burk*, 700 F.2d 70 (2nd Cir. 1983), *cert denied*, 464 U.S. 816 (1983); *United States
     v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980), *cert denied*, 449 U.S. 1126 (1981); *Miller v.
27   Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.), *modified on rehearing*, 628 F.2d 932
     (1980), *cert denied*, 450 U.S. 1041 (1981); *see Shoen v. Shoen*, 5 F.3d at 1292 (9th Cir.
28   1993); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977).

material and relevant." Second, even if the information sought is highly material and relevant, there is an additional requirement that there be a "compelling need" for the information beyond mere relevancy, and no such compelling need has been articulated, much less proven. Finally, whatever relevant information may be in the hands of Google is obtainable from other sources. Accordingly, the Court must quash the Subpoena. FED. R. CIV. P. 45(c)(3)(A)(iii).

Federal Common Law. Federal common law under Federal Rule of Evidence 501 likewise recognizes a qualified Reporter's Privilege. *See Jaffee v. Redmond*, 518 U.S. 1 (1996). The factors to be considered in determining whether to apply the privilege are:

> (1) whether important private and public interests would be served by recognition of the privilege; (2) whether the evidentiary cost of recognizing the privilege is likely to be modest; and (3) whether similar protections are afforded by the states, either through legislation or the common law.

*See Jaffee*, 518 U.S. at 10-15; *see also In re Williams*, 766 F.Supp. 358, 367 (W.D. Pa. 1991), *aff'd*, 963 F.2d 567 (3d Cir. 1992) (*en banc*); *New York Times v. Gonzalez*, 382 F. Supp. 2d 457, 492-508 (S.D.N.Y. 2005), *vacated on other grounds*, 459 F.3d 160, 168 (2d Cir. 2006); *but see In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111 (N.D. Cal. 2006) (declining to apply *Jaffee* factors to a grand jury subpoena.) Here, there is no doubt that the federal common law Reporter's Privilege applies, and as discussed above, it likewise prevents Google from producing documents regarding Frenkel's confidential sources and unpublished material.

The California Shield Law. The California Shield Law is enshrined in the state constitution, CALIF. CONST. ART. I § 2(b), and it precludes compelling the disclosure of confidential sources or unpublished material. *Id.*; *see also* CAL. EVID. CODE § 1070(a); CAL. CIV. PRO. CODE § 1986.1; *O'Grady*, 139 Cal. App. 4th at 1466. Specifically, the California Shield Law protects from disclosure any "unpublished information obtained or prepared in gathering, receiving, or processing of information for communication to the public." CALIF. CONST. ART. I § 2(b); CAL. EVID. CODE § 1070(a); CAL. CIV. PRO. CODE § 1986.1. "Unpublished information" is broadly defined, and extends to all information not literally published. CAL. EVID. CODE § 1070(a); *New York Times Co. v. Superior Court*, 51 Cal. 3d

454, 456 (1990). To be entitled to protection by the California Shield Law, the reporter must be engaged in "the gathering and dissemination of news." *O'Grady*, 139 Cal. App. 4th at 1457.

As in *O'Grady*, Frenkel was engaged in the gathering and dissemination of news. (Frenkel Decl. ¶¶ 3-4, 7.) The fact that Frenkel chose to disseminate news on a website, as opposed to a more traditional source of journalism, is irrelevant. *O'Grady*, 139 Cal. App. 4th at 1466. Moreover, the Subpoena seeks documents regarding unpublished information Frenkel obtained or prepared for communication to the public on the PTT. (Frenkel Decl. ¶ 6.) Accordingly, the Subpoena falls squarely within the protections afforded to Frenkel by the California Shield Law, and the Court thus must quash the Subpoena. FED. R. CIV. P. 45(c)(3)(A)(iii).

D.   The Subpoena Should be Quashed Because it is Unduly Burdensome.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(c)(1). A court must quash or modify a subpoena that subjects a person to an undue burden. FED. R. CIV. P. 45(c)(3)(A)(iv). A subpoena imposes an undue burden on a party when the subpoena is overbroad. *Theofel*, 359 F.3d at 1071-72 (quashing overbroad subpoena). Courts give "special weight" to the burden placed on non-parties in producing materials in response to a subpoena, especially where the requested materials are available from another source. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113-14 (D. Conn. 2005) (quashing non-party subpoena on the ground that non-party faced substantial burden if forced to comply with subpoena, and information sought was available from the public record and/or parties to the case).

Pursuant to Federal Rule of Civil Procedure 26(b)(1), all of the document requests contained in the Subpoena are grossly overbroad and not properly limited to relevant and non-privileged information, and therefore compliance would impose an undue burden on Google, a non-party. Like the subpoena quashed in *Theofel*, Albritton's Subpoena is overbroad because it does not limit its requests to communications and documents containing subject matter

12.  DEFENDANTS CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN, JOHN NOH & NON-PARTY MARK CHANDLER'S NOTICE OF MOTION; MOTION TO QUASH SUBPOENA, MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES

1  relevant to the Texas Action, and its requests contain no limitation as to time. By way of
2  example only, Subpoena Request Nos. 1-4 seek, among other things, communications and
3  documents regarding the website Patently-O and its author, Crouch. We understand that
4  Crouch has separately objected to the Subpoena on behalf of himself and his website,
5  Patently-O. For further example, Subpoena Request Nos. 1-3 seek "all" documents relating to
6  "communications" or "user searches of the internet and/or THE BLOGS" regarding the ESN
7  Action. Materials responsive to these requests likely include, for example, communications
8  among attorneys for Cisco regarding Cisco's litigation strategy in the ESN Action. Not only
9  are such communications privileged, they also are irrelevant to the claims and defenses at
10  issue in the Texas Action.

11  Indeed, any of the communications and documents produced pursuant to the Subpoena
12  would likely include privileged, protected, and confidential information that is unrelated and
13  irrelevant to the Texas Action. Moreover, Albritton makes no showing of why he needs to
14  pursue non-party Google for the communications and documents sought and not the actual
15  parties to the communications and documents. We think we know why. Albritton is
16  attempting to circumvent the limits on discovery in the Texas Action, including the Protective
17  Order entered by the court, to invade the privileges and protections afforded to Defendants by
18  law. Accordingly, Movants respectfully request that the Court quash the Subpoena on
19  grounds that the document requests are overly broad and not properly limited to relevant and
20  non-privileged information and therefore unduly burdensome. FED. R. CIV. P. 45(c)(3)(A)(iv).

21  **V.  CONCLUSION**
22  The Subpoena should be quashed. First, the Subpoena violates the plain terms of the
23  Federal Stored Communications Act, which prohibits Google from disclosing the
24  communications sought by the Subpoena. Second, the Subpoena violates Rule 45(c)(3)(A)
25  because it seeks privileged and protected information and is unduly burdensome.
26  Accordingly, the Motion to Quash or, in the alternative, for a Protective Order should be
27  granted.
28

| | | |
|---|---|---|
| 1 | Dated: September 4, 2008 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | By /s/ Howard Holderness |
| 3 | | Howard Holderness |
| 4 | | Attorneys for Movants |
| 5 | | CISCO SYSTEMS, INC., RICHARD FRENKEL, MALLUN YEN, JOHN NOH & MARK CHANDLER |
| 6 | | |
| 7 | Dated: September 4, 2008 | JACKSON WALKER L.L.P. |
| 8 | | By /s/ Charles L. Babcock |
| 9 | | Charles L. Babcock |
| 10 | | Attorneys for Movants |
| 11 | | CISCO SYSTEMS, INC., MALLUN YEN, JOHN NOH & MARK CHANDLER |
| 12 | Dated: September 4, 2008 | LAW OFFICE OF GEORGE L. MCWILLIAMS, P.C. |
| 13 | | |
| 14 | | By /s/ George L. McWilliams |
| 15 | | George L. McWilliams |
| 16 | | Attorneys for Movant RICHARD FRENKEL |