Paul Arons, Bar No. 84970
LAW OFFICE OF PAUL ARONS
1616 West Street
Redding, CA 96001
(530) 244-5870

O. Randolph Bragg, Ill. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-SAN JOSE OFFICE

| | |
|---|---|
| ELENA DEL CAMPO, on behalf of herself and others similarly situated<br><br>            Plaintiff,<br>        vs.<br>GEORGE KENNEDY, AMERICAN CORRECTIVE COUNSELING SERVICES, INC., DON R. MEALING, LYNN R. HASNEY a/k/a R.D. DAVIS and DOES 1 through 20,<br>            Defendants. | Case No.: No. C01-21151 JW<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS<br><br>Date:  April 29, 2002<br>Time: 9:00 a.m.<br>Courtroom 8 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  STATUTORY FRAMEWORK ................................................. 2

III. FOR PURPOSES OF THIS MOTION DEFENDANTS MUST
     ACCEPT AS TRUE THE FACTS AS ALLEGED IN COMPLAINT ................ 4

     A. LEGAL STANDARD ................................................... 4

     B. DEL CAMPO ALLEGES A SCHEME REPLETE WITH FRAUD AND
        MISREPRESENTATION IN WHICH ACCS AND THE DISTRICT
        ATTORNEY UNLAWFULLY COERCE CHECK WRITERS TO PAY
        FEES THAT ARE NOT OWED ........................................... 4

IV.  DEFENDANTS' THREAT TO CRIMINALLY PROSECUTE
     MS. DEL CAMPO IF SHE DID NOT AGREE TO PAY MONEY
     IS SUFFICIENT TO CONFER STANDING ................................... 9

V.   THE DISTRICT ATTORNEY IS NOT IMMUNE FROM LIABILITY,
     BECAUSE HE IS ACTING ON BEHALF OF THE COUNTY,
     NOT THE STATE, IN HIS PURPORTED IMPLEMENTATION
     OF THE CHECK DIVERSION PROGRAM .................................. 10

VI.  PLAINTIFF'S CLAIM UNDER THE CALIFORNIA UNFAIR
     BUSINESS PRACTICES SHOULD NOT BE DISMISSED ................... 14

     A. THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT IS NOT
        RESTRICTED TO CONSUMER TRANSACTIONS .......................... 14

     B. DEFENDANTS' INSISTENCE THAT THEY HAVE DONE NOTHING
        WRONG HAS NO BEARING ON THEIR MOTION TO DISMISS THE
        UNFAIR BUSINESS PRACTICES ACT CLAIM, SINCE DEFENDANTS
        RAISES A FACTUAL DISPUTE THAT CANNOT BE RESOLVED IN A FED.R.CIV.P.
        12(B)(6) MOTION ................................................. 17

VII. ACCS' ATTEMPTS TO COLLECT CHECKS AND CHECK
     FEES CONSTITUTE "DEBT COLLECTION" WITHIN THE
     MEANING OF THE FAIR DEBT COLLECTION PRACTICES ACT ........... 18

VIII. CONCLUSION ...................................................... 23

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Ballard v. Equifax Check Services, Inc.*,
158 F.Supp.2d 1163 (E.D. Cal. 2001)     16

*Bank of the West v. Superior Court,*
2 Cal.4th 1254 (1992)     16

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,
111 F.3d 1322 (7th Cir. 1997)     18, 21

*Bishop Paiute Tribe v. County of Inyo*,
275 F.3d 893 (9th Cir. 2002)     11-13

*Blank v. Kirwin,*
39 Cal.3d 311 (1985)     16-17

*Brannan v. United Student Aid Funds, Inc.,*
94 F.3d 1260 (9th Cir. 1996)     18

*Buckley v. Fitzsimmons,*
509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)     11

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*,
200 F.3d 661 (9th Cir. 2000)     4

*Charles v. Lundgren & Assocs., P.C.*,
119 F.3d 739 (9th Cir. 1997)     18

*Churchill Village, L.L.C. v. General Elec. Co.*,
169 F.Supp.2d 1119 (N.D.Cal. 2000)     15

*Collins v. Harker Heights*,
503 U.S. 115, 112 S.Ct. 1061 (1992)     10

*Committee on Children's Television v. General Foods Corp.,*
35 Cal. 3d 197 (1983)     15

*Conley v. Gibson,*
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)     4

*Duffy v. Landberg*,
133 F.3d 1120 (8th Cir. 1998);     18

*Farmers Ins. Exchange v. Superior Court,*
2 Cal.4th 377 (1992) ........................................................... 15

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
12 F.Supp.2d 1068 (C.D. Cal. 1998) ................................. 15

*Fletcher v. Kalina,*
93 F.3d 653 (9th Cir. 1996) ............................................... 12

*Gradisher v. Check Enforcement Unit, Inc.*,
133 F.Supp.2d 988, 990-92  (W.D. Mich. 2001) ............... 21

*Gradisher v. Check Enforcement Unit, Inc.*,
203 F.R.D. 271 (W.D. Mich. 2001) ................................... 21

*Gruntz v. County of Los Angeles*,
202 F.3d 1074 (9th Cir. 2000) ....................................... 21-22

*Hong Kong Supermarket v. Kizer,*
830 F.2d 1078 (9th Cir. 1987). ............................................ 9

*In re Byrd*,
265 Bankr. 246 (Bankr. E.D.N.C. 2000) ........................... 22

*Irwin v. Mascott*,
112 F.Supp.2d 937 (N.D.Cal. 2000) ................................. 16

*Irwin v. Mascott*,
186 F.R.D. 567 (N.D. Cal. 1999) ............................... 16,19-20

*Kawaoka v. City of Arroyo Grande*,
17 F.3d 1227 (9th Cir. 1994) ............................................. 10

*Keele v. Wexler*,
149 F.3d 589, 595-96 (7th Cir. 1998) ................................ 21

*Liles v. American Corrective Counseling Services, Inc.*,
131 F.Supp.2d 1114 (S.D. IA 2001) ................................... 21

*Malley v. Briggs,*
475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ...... 12

*Morse v. Republican Party of Virginia*,
517 U.S. 186, 116 S. Ct. 1186,  134 L. Ed. 2d 347 (1996) ... 20

*Motors, Inc. v. Times Mirror Co.,*
102 Cal.App.3d 735 (1980) ............................................... 16

*Newman v. Checkrite California, Inc.,*
912 F. Supp. 1354 (E.D. Cal. 1995)      16, 19

*Peloza v. Capistrano Unified Sch. Dist.,*
37 F.3d 517, (9th Cir. 1994),
*cert. denied,* 515 U.S. 1173, 115 S.Ct. 2640,
132 L.Ed.2d 878 (1995)      4, 17

*People v. Bandy,*
216 Cal App 2d 458 (1963)      2

*People v. McKale,*
25 Cal.3d 626 (1979)      15

*People v. Swanson,*
123 Cal App 3d 1024 (1981)      2

*Pollice v. National Tax Funding, L.P.,*
225 F.3d 379 (3d Cir. 2000)      18

*Reddy v. Litton Indus.,*
912 F.2d 291, (9th Cir. 1990),
*cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).      4

*Samura v. Kaiser Foundation Health Plan, Inc.,*
17 Cal.App.4th 1284 (1993)      15

*Scheuer v. Rhoades,*
416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)      4

*Sinaloa Lake Owners Ass'n. v. City of Simi Valley,*
882 F.2d 1398 (1989),
*cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990)      10

*Singleton v. City of New York,*
632 F.2d 185 (2nd Cir 1980)      13

*Snow v. Jesse L. Riddle, P.C.,*
143 F.3d 1350 (10th Cir. 1998)      18

*Taylor v. Gregg,*
36 F.3d 453 (5th Cir. 1994)      13

*Tumey v. Ohio,*
273 U.S. 510,  47 S.Ct. 437, 71 L.Ed. 749 (1927).      10

*Viceroy Gold Corp. v. Aubrey,*
75 F.3d 482 (9th Cir. 1995)      9

*Weiner v. San Diego County*,
210 F.3d 1025 (9th Cir. 2000)                                          13

*Williamson v. General Dynamics Corp.*,
208 F.3d 1144 (9th Cir.),
*cert. denied,* 531 U.S. 929, 148 L. Ed. 2d 247, 121 S. Ct. 309 (2000)    4

*Wilson v. United States*,
125 F.3d 1087 (7th Cir. 1997)                                          20

*Wolff v. McDonnell*,
418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)                     10

## Statutes

11 U.S.C.A. § 523(a)(7)                                                 22

15 U.S.C. § 1692(a)                                                     14

15 U.S.C. § 1692a(5).                                                   18

15 U.S.C. §§ 1692a(6).                                                  18

15 U.S.C. § 1692f(1)                                                    19

42 U.S.C. § 1983                                                   *passim*

California Constitution, Article XI, section 4                          11

Cal. Bus & Prof. Code § 17200                                     *passim*

Cal. Bus. & Prof. Code § 17203                                          15

Cal. Bus. & Prof. Code § 17204                                          15

Cal. Gov. Code § 3060                                                   11

Cal. Gov. Code § 24000(a)                                               11

Cal. Gov. Code § 24001                                                  11

Cal. Gov. Code § 25300                                                  11

Cal. Gov. Code § 25303                                                  11

Cal. Penal Code § 476a                                    2, 17

Cal. Penal Code §§ 1001.60 et seq                         *passim*

Cal. Penal Code § 1001.60                              3, 12, 17

Cal. Penal Code § 1001.61                                    12

Cal. Penal Code § 1001.62.                                3, 17

Cal. Penal Code § 1001.64                                     3

Cal. Penal Code § 1001.65.                                3, 17

Wright & Miller, <u>Federal Practice and Procedure</u>, Civil 2d § 1357    4

## I. INTRODUCTION

American Corrective Counseling Services, Inc. [ACCS] is a collection agency. Donald R. Mealing owns and operates. In California, allegedly pursuant to a state penal statute, ACCS contracts with local prosecutors to operate a diversion program designed only for check writers who intended to defraud the payee by writing an insufficient funds check, knowing it would not clear. By falsely threatening criminal prosecution under penal statutes. ACCS coerces tens of thousands of California check writers who are not criminal suspects, but who instead inadvertently wrote a check that did not clear, into paying over $100.00 each in fees for this diversion program.

On December 11, 2001 Elena del Campo filed this class action lawsuit against ACCS. She did this to put a stop to ACCS' abusive and illegal collection practices and to obtain some compensation for class members who had been pressured, under threat of criminal prosecution, into paying millions of dollars in unlawful collection fees.

Plaintiff filed this action on behalf of herself and all others similarly situated, and on behalf of the general public, for violations of the Civil Rights Act, 42 U.S.C. § 1983 by defendant George Kennedy, acting in his official capacity as Santa Clara County District Attorney, and for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.* [hereinafter "FDCPA"] and the California Unfair Business Practices Act, Business and Professions Code §§ 17200 *et seq.* [hereinafter "CUBPA"], by defendants American Corrective Counseling Services, Inc.[ACCS], Don R. Mealing, Bruce D. Raye and R.D. Davis. ACCS collects on checks, which did not clear throughout the United States, including various counties in California. In California ACCS operates allegedly pursuant to a "bad check diversion program" authorized by California Penal Code §§ 1160.60 *et seq.* However, in operating this program, both in Santa Clara County and in other California counties, ACCS imposes unlawful collection charges, violates constitutional due process guarantees afforded by the California and United States Constitution, and violates federal statutes created to protect people from predatory

collection practices.  Defendant George Kennedy, acting in his official capacity, by actively assisting ACCS and by delegating non-delegable duties to ACCS, also violates the constitutional rights of check writers.  The most effective means for remedying these violations is through this class action, seeking declaratory and injunctive relief, restitution and damages.

Pursuant to Rule 12(b)(6), Rules of the Federal Rules of Civil Procedure, defendants have moved the Court to dismiss the complaint for failure to state a cause of action.  Defendants' motion to dismiss should be denied, since the complaint contains allegations that are sufficient to support each claim for relief.

## II.  STATUTORY FRAMEWORK

California Penal Code § 476a is a criminal statute prohibiting the making or delivering of a check with insufficient funds.  The statute provides, in pertinent part,

> (a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, **willfully, with intent to defraud**, makes or draws or utters or delivers any check, or draft or order upon any bank or depositary, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such check, draft, or order and all other checks, drafts, or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison.  *Emphasis added;* Penal Code § 476a(a).

By its language section 476a applies only where the check writer has written an insufficient funds check with knowledge of the lack of sufficient funds and with an intent to defraud.  *People v. Swanson,* 123 Cal App 3d 1024 (1981); *People v. Bandy,* 216 Cal App 2d 458 (1963).

In California Penal Code §§ 1001.60 et seq. provides the authority for local counties to authorize a "bad check diversion program."[1]  Section 1001.60 expressly provides:

> "writing a bad check" means making, drawing, uttering, or delivering any check ... for the payment of money *where there is probable cause to believe* there has been a violation of Section 476a.  *Emphasis added.*

Prior to referring a check writer to the diversion program, the district attorney is required to determine if the referral is appropriate by considering:  (1) the amount of the check; (2) whether the check writer has a prior criminal record or has previously been diverted; (3) the number of bad check grievances against the check writer; (4) whether there are current bad check grievances against the check writer; and (5) *the strength of the evidence, if any, of intent to defraud the victim.  Emphasis added*; Penal Code § 1001.62.

When a person has written a "bad check" within the meaning of §1001.60, a district attorney may forego prosecution of the check writer if the check writer completes a class, pays full restitution to the victim of the bad check, and pays a $35.00 collection fee, if demanded.  Penal Code §§ 1001.64, 1001.65.  *Under no circumstances may a check writer be assessed a fee for attending a check writing class unless the district attorney prosecutes the check writer and obtains a conviction against him or her, **and** the court issues a finding that the check writer is able in whole or in part to pay the expense of the education class.*  Penal Code §1001.65(b).

In her complaint the plaintiff challenges. the defendants' systemic failure to adhere to this statutory scheme.

---

1.  These code sections are attached in full to this memorandum for the Court's convenience.

### III. FOR PURPOSES OF THIS MOTION DEFENDANTS MUST ACCEPT AS TRUE THE FACTS AS ALLEGED IN COMPLAINT

#### A. Legal Standard

Defendants have filed a motion to dismiss this action for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss, a district court must accept the facts alleged in the complaint as true. *Scheuer v. Rhoades*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). On a Rule 12(b)(6) motion, the court assumes that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir. 1994), *cert. denied,* 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995). Generally, the complaint should not be dismissed unless it appears that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.), *cert. denied,* 531 U.S. 929, 148 L. Ed. 2d 247, 121 S. Ct. 309 (2000). S*ee also,* Wright & Miller, <u>Federal Practice and Procedure</u>, Civil 2d § 1357. To dismiss with prejudice, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven. *See Reddy v. Litton Indus.,* 912 F.2d 291, 293 (9th Cir. 1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).

#### B. Del Campo Alleges a Scheme Replete with Fraud and Misrepresentation in which ACCS and the District Attorney Unlawfully Coerce Check Writers to Pay Fees that Are Not Owed

Defendants, in their memorandum in support of the present motion, describe a voluntary diversion program in which defendants do nothing that is not expressly authorized by California statute. Although that may be what defendants hope to prove at trial, those are not the facts alleged in the Complaint.

Defendant ACCS created and operates the Bad Check Restitution Program. ACCS operates this program in counties throughout California, under color of law. Complaint, pp. 3:1-13, 4:5-8, 9:22-27. Defendant Don R. Mealing designed, developed, and implements the Restitution Program utilized by ACCS. Complaint, p. 4:8-10. Defendant George Kennedy, acting in his official capacity, has contracted with ACCS, an independent contractor, for its services in operating the Restitution Program. Complaint, p. 4:11-13.

On or about June 11, 2001 plaintiff Elena del Campo wrote a check in the amount of $95.02 to the Fry's Electronics Store in Palo Alto, California, [Fry's], for the purchase of goods for personal use. This check did not clear upon presentment. Ms. del Campo learned a few days later that her check had not cleared and she contacted Fry's in order to pay the check. Ms. del Campo was told by a Fry's employee that the check was not yet in the Fry's computer system, and that therefore Ms. del Campo's payment could not be accepted. She was directed to wait for a verbal or written payment request from Fry's. Fry's did not contact Ms. del Campo. Complaint, p. 4:16-25.

In October 2001 Ms. del Campo received a three-page document dated October 3, 2001, purportedly sent by the Santa Clara County District Attorney. The letter was entitled "**OFFICIAL NOTICE**" on letterhead of Santa Clara County District Attorney and George Kennedy, District Attorney, over the signature of "Bruce D. Raye, Criminal Investigator," and concerned the unpaid check which Ms. del Campo had written to Fry's. [2] Although the letter appears to be official correspondence from the Santa Clara County District Attorney, it was actually prepared and sent by ACCS, without any direct supervision or participation by the Santa Clara County District Attorney. Although the Santa Clara County District Attorney did not participate in the decision to send the letter

---

2. Exhibit 2 to the Complaint. For convenience, a copy of this letter is attached.

to Ms. del Campo, the Santa Clara County District Attorney is aware that ACCS uses form letters such as this, which falsely give the impression that the letter is official correspondence from the local prosecutor.  Complaint, pp. 4:25-5:11.  On or about October 17, 2001 Ms. del Campo mailed payment in the amount of $95.02 to the address provided in the letter she had received.  Complaint, p. 6:21-22.

In November 2001 Ms. del Campo received a second letter, purportedly from the Santa Clara County District Attorney, Bad Check Restitution Program, signed by "R.D. Davis, Case Coordinator."  This letter is dated November 7, 2001 and is entitled "**NOTICE OF FAILURE TO COMPLY**."[3]  Complaint, p 6:25-28.  On or about December 7, 2001  Ms. del Campo received a third letter, purportedly from the Santa Clara County District Attorney, Bad Check Restitution Program, signed by "R.D. Davis, Case Coordinator."  This letter is dated December 5, 2001 and is entitled "**OFFICIAL NOTICE**."[4]  Complaint, p. 8:3-7.

In the letters sent to Ms. del Campo the ACCS and its agents make false representations, including, but not limited to, the following:

a.  the Santa Clara County District Attorney operates and controls a Bad Check Restitution program.

b.  the letter was prepared and mailed by the Santa Clara District Attorney, and is official correspondence from the District Attorney.

c.  communications to the toll-free phone number and address printed on the letter will be received and considered by the District Attorney.

d.  the payee of the check has made an "Incident Report" against the check writer alleging a violation of Penal Code § 476a.

---

3.  Exhibit 3 to the Complaint.  For convenience, a copy of this letter is attached.
4.  Exhibit 4 to the Complaint.  For convenience, a copy of this letter is attached.

e.  the check writer has committed a crime by writing a check that did not clear and must enroll in a misdemeanor diversion program to avoid possible criminal prosecution.

f.  there is a reasonable probability that criminal prosecution proceedings will be pursued if Ms. del Campo does not pay $170.00 to the Santa Clara County District Attorney.

g.  as a condition of participating in a misdemeanor diversion program the check writer is obligated to pay the check amount, plus a $35.00 administrative fee, a $10.00 returned item fee and the check writer must attend and pay $125.00 for a "Financial Accountability Class."

Contrary to the misrepresentations in the letters, the truth is:

a.  that the Bad Check Restitution Program is operated for profit by ACCS with little or no supervision by the District Attorney.

b.  the letters are prepared and sent by ACCS, not by the District Attorney;

c.  the address and phone number on the letters are for ACCS, not for the District Attorney.  ACCS representatives who are contacted by check writers disguise the fact that they are employees of a private collection agency, and represent that they are employees of the District Attorney;

d.  check payees have not made an "Incident Report" or alleged that check writers have violated Penal Code § 476a;

e.  the District Attorney has not made any criminal investigation and the District Attorney does not have probable cause to believe that the check writer has violated Penal Code § 476a.

f.  the District Attorney rarely, if ever, initiates criminal prosecution for failure to enroll in the Restitution Program.

g.  the check writer is not lawfully obligated to pay all the charges sought. Complaint, pp. 5:12-9:20.

The practices and procedures used by ACCS in the Santa Clara County Bad Check Restitution Program are the same, or similar to, those followed in each bad check restitution program that ACCS operates in California.  ACCS' practices and policies that are common in all the California programs are:  (1) ACCS' prepares and sends letters containing the false representation that the letter is sent by the county district attorney;  (2) ACCS pretends it is the district attorney's office when responding to check writer and check recipient inquiries;  (3) ACCS sends collection demands that do not contain the validation and disclosure notices required by the FDCPA, 15 U.S.C. §§ 1692e(11) and 1692g(a);  (4) ACCS  sends collection letters threatening to open a criminal investigation despite the fact that ACCS neither has the intent, nor the legal authority to do so;  (5) ACCS sends collection letters stating or implying that there is a probability that the check writer will be criminally prosecuted unless he or she submits to the Restitution Program and pays all fees being demanded;  (6) ACCS sends collection letters misrepresenting the character, amount, or legal status of the alleged debt;  (7) ACCS sends collection letters containing the false representation or implication that the check writer has committed a crime;  (8) ACCS sends collection letters in which it seeks check charges that are not authorized by law.  Complaint, 9:22-10:19.

The District Attorney's violation are based on the fact that he provides blanket authorization to ACCS to conduct the Bad Check Restitution Program in the name of the District Attorney, without providing any meaningful supervision of, or control over, ACCS' actions.  He refers checks that have not cleared to the Bad Check Restitution Program without first determining whether there is probable cause to believe there has been a violation of Penal Code § 476a.  He allows ACCS to collect unlawful check charges and his office then shares in the proceeds of those collections.  Complaint, pp. 10:19-28, 11:2-6, 14:21-24.

**IV. DEFENDANTS' THREAT TO CRIMINALLY PROSECUTE MS. DEL CAMPO IF SHE DID NOT AGREE TO PAY MONEY IS SUFFICIENT TO CONFER STANDING**

Defendants seek dismissal of the plaintiff's federal and state due process claims. Defendants argue that the threat to criminally prosecute Ms. del Campo if she doesn't pay collection fees cannot violate due process since Ms. del Campo never paid any of the fees demanded and since the diversion program is "voluntary."

On the issue of personal harm to Ms. del Campo, defendants appear to be arguing that she does not have standing to raise a constitutional claim because she has not suffered any harm.  Standing is an issue arising from Article III of the United States Constitution.  "The constitutional limitations of Article III contain three components: (1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and, (3) a substantial likelihood that the requested relief will redress or prevent the injury."  *Viceroy Gold Corp. v. Aubrey,* 75 F.3d 482, 488 (9th Cir. 1995), *citing Hong Kong Supermarket v. Kizer,* 830 F.2d 1078, 1081 (9th Cir. 1987).

In the present case Ms. del Campo was threatened with deprivation of liberty or property.  The first letter Ms. del Campo received was designed to give the false impression that it had been sent by a *criminal* investigator working for the local prosecutor.  In the letter Ms. del Campo is told that she has two choices:  (1) appear on a criminal charge and risk up to six months in jail and a $1,000.00 fine; or,  (2) participate in the "Bad Check Restitution Program", at a cost of $170.00.[5]  Ms. del Campo is warned that henceforth she must communicate solely with the "district attorney" and she must not contact the merchant to whom she wrote the check.  If she

---

5.  The letter also describes a procedure for persons who claim that they did not write the check, or who stopped payment on the check.  There is also an ambiguous statement concerning notification that the check had not cleared.  None of these alternatives apply to a person, such as Ms. del Campo, who has written a check and who has subsequently learned that the check did not clear.

attempted to contact the district attorney, however, she would have ended up talking with an ACCS employee pretending to be a Santa Clara County District Attorney "case coordinator." Complaint, pp. 9:24-28, 10:26-28. In the second letter Ms. del Campo received, the Santa Clara County District Attorney stated that unless she schedules a diversion class and pays "the balance" the District Attorney may file an incident report "in MUNICIPAL COURT!" In the third letter Ms. del Campo received,[6] she is told by the District Attorney that unless she pays $170.00 she may be criminally prosecuted.

In short, the District Attorney repeatedly told Ms. del Campo that her choices were to either pay money or risk jail. That is a sufficient threat to give her standing to challenge the constitutionality of the defendants' conduct.[7]

**V.  THE DISTRICT ATTORNEY IS NOT IMMUNE FROM LIABILITY, BECAUSE HE IS ACTING ON BEHALF OF THE COUNTY, NOT THE STATE, IN HIS PURPORTED IMPLEMENTATION OF THE CHECK DIVERSION PROGRAM**

Defendant Kennedy argues that he is immune from liability under 42 U.S.C. § 1983 because he is a state, not a county, official.[8] The Eleventh Amendment

---

6. Exhibit 4 to the Complaint.

7. Although they do not make it a basis for their motion to dismiss, defendants comment that it is unclear whether plaintiff is claiming a violation of procedural due process, substantive due process, or both. The touchstone of due process is protection of the individual against arbitrary action of government. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). The Due Process Clause was intended to prevent government officials "from abusing [their] power, or employing it as an instrument of oppression." *Collins v. Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 1069 (1992). To establish a violation of substantive due process, a plaintiff must prove that the governmental action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n. v. City of Simi Valley,* 882 F.2d 1398, 1405-06 (1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). Assuming, *arguendo,* that the practices described by del Campo do not effect fundamental rights, substantive due process is still violated where the government does not have a legitimate reason for acting as it did. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1233-34 (9th Cir. 1994). In the present case the defendants cannot articulate a legitimate reason for systematically ignoring the statutory requirements of a diversion program and demanding and collecting unauthorized check fees. The procedural due process right to a fair tribunal is also implicated on account of the defendants' pecuniary interest in the outcome. *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927).

8. Defendant Kennedy actually appears to be arguing that, by reason of the Eleventh Amendment, he is immune from liability under both the federal and California constitutions.

immunizes state officials from liability for federal constitutional violations. The District Attorney cannot establish that he is a state official since he clearly is acting on behalf of Santa Clara County in the conduct alleged in the Complaint.

Defendant District Attorney's claim for Eleventh Amendment immunity is grounded in the argument that in the conduct that is the subject of the lawsuit, he was acting as a state, not a county, official. In determining whether a district attorney is acting on behalf of the county or the state, it is now well-established that a district attorney plays a dual role:

> He is at once the law officer of the county and the public prosecutor. While in the former capacity he represents the county and is largely subordinate to, and under the control of, the [county] board of supervisors, he is not so in the latter. In the prosecution of criminal cases he acts by the authority and in the name of the people of the state. *Bishop Paiute Tribe v. County of Inyo*, 275 F.3d 893 (9th Cir. 2002).

With the exception of prosecutorial conduct, however, a California district attorney acts as a county official. The California constitution and Government Code clearly label district attorneys as county officials.[9] In *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) the Supreme Court held that a prosecutor is not absolutely immune when he allegedly fabricated evidence during the investigation by retaining a dubious expert witness. *Id.* at 273-75, 113 S.Ct. 2606. The Court reasoned that "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, ... and the detective's role in

---

Obviously, the Eleventh Amendment does not have any bearing on a state or county official's liability under the California constitution.

9. Under the California Constitution, district attorneys are not designated as members of the executive branch. Instead, district attorneys in California are defined in Article XI of the Constitution, entitled "Local Government." Article XI, section 4 of the California Constitution provides that "County charters shall provide for ... an elected district attorney...." District attorneys can be removed from office following the accusation of the county grand jury. Cal. Gov. Code § 3060. California law explicitly states that the district attorney is a county officer. Cal. Gov. Code § 24000(a). The county board of supervisors sets the district attorney's salary. Cal. Gov. Code § 25300. The district attorney must be registered to vote in the county in which he holds office. Cal. Gov. Code § 24001. The county has the authority to supervise the district attorney's conduct and use of public funds. Cal. Gov. Code § 25303.

searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested...."  *Id.* at 273, 113 S.Ct. 2606 (citations omitted).  *See also Malley v. Briggs,* 475 U.S. 335, 342-43, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) [holding that a police officer who secures an arrest warrant without probable cause cannot assert an absolute immunity defense].  In *Fletcher v. Kalina,* 93 F.3d 653, 655 (9th Cir. 1996), the court held that a prosecutor was not entitled to absolute immunity for conduct in preparing a declaration in support of an arrest warrant.  In *Bishop Paiute Tribe v. County of Inyo*, 275 F.3d 893 (9th Cir. 2002) pursuant to the Civil Rights Act, 42 U.S.C. § 1983, the Bishop Paiute Tribe challenged the district attorney's conduct in obtaining and executing a search warrant for employee records.  The Ninth Circuit ruled that since the District Attorney was *investigating allegations* of welfare fraud and that no criminal complaint had been filed, the District Attorney was merely performing his role as "detective."  Therefore he was acting as a county officer.  *Id.* at 909.  The consistent holding in all these cases is that prior to commencing to decide whether to actually initiate a prosecution, a district attorney does not have Eleventh Amendment immunity.

Moreover, the diversion program may only be created with the express authorization of the county board of supervisors.  Cal. Penal Code § 1001.60.  Cases which are referred to the diversion program are not being prosecuted.  Cal. Penal Code § 1001.61.  Consequently, for the conduct alleged in the Complaint the District Attorney is not acting in a prosecutorial role.  In fact, the gist of the allegations against the District Attorney is that he is not acting at all, having unlawfully abdicated his duties to a private collection agency.  The duties which have been delegated to ACCS are administrative on behalf of the county, not prosecutorial on behalf of the state. For instance, indiscriminately referring all bad checks to a privately operated collection company, allowing the debt collector to use the district attorney's letterhead and allowing the debt collector to threaten and collect unlawful check fees are not prosecutorial functions.

The cases cited by defendants are either distinguishable or undermine defendant Kennedy's claim of immunity. As already noted, in *Bishop Paiute Tribe v. County of Inyo*, *supra,* 275 F.3d 893, the Ninth Circuit ruled that the district attorney was not immune, because in obtaining and executing a search warrant prior to criminal charges being brought, he was not acting in a prosecutorial capacity. In *Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000), the plaintiff, who had been acquitted of the criminal charges filed against him, sued San Diego County for wrongful prosecution pursuant to the Civil Rights Act. The Ninth Circuit held that the San Diego County district attorney acted as a state officer when he made the decision to prosecute Weiner, and he was therefore insulated from federal liability by the Eleventh Amendment. *Id*., p. 1030. Neither *Singleton v. City of New York*, 632 F.2d 185 (2nd Cir 1980), nor *Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994) have any bearing on the issues now before this Court. The plaintiff in *Singleton* had been arrested and charged with various criminal offenses. When his first trial resulted in a hung jury, the criminal charges were dismissed, "in contemplation of dismissal." Singleton then sued defendants for, *inter alia*, denial of due process. The Section 1983 issues concerned the appropriate statute of limitations and the substantive merits of the plaintiff's claims. The *Singleton* court did not address Eleventh Amendment immunity.

In *Taylor v. Gregg*, 36 F.3d 453, *supra*, a group of rowdy Dallas Cowboy fans was arrested and subsequently indicted by a grand jury. Following indictment, the plaintiffs were offered, and accepted, pre-trial diversion. *Id*., 454-455. They then filed suit pursuant to 42 U.S.C. § 1983 for denial of their constitutional rights. The issue before the *Taylor* court was whether pre-trial diversion constituted a favorable termination for malicious prosecution purposed. Eleventh Amendment immunity issues were not raised.

*Taylor* and *Singleton*, however, illustrate a significant factual distinction between prosecutorial and non-prosecutorial conduct. In both of these cases the Section 1983

claims were filed after the plaintiffs had been arrested and indicted or tried.  In contrast, in the present case the challenged procedures take place prior to arrest or indictment.  Neither the decision to refer all check cases to ACCS, nor the decision to allow ACCS to impersonate the district attorney, nor the decision to allow ACCS to demand and collect inflated fees are prosecutorial decisions.  The district attorney is acting as a mere administrator for the benefit of the county, and he is liable for constitutional violations.

## VI.  PLAINTIFF'S CLAIM UNDER THE CALIFORNIA UNFAIR BUSINESS PRACTICES SHOULD NOT BE DISMISSED

### A.  The California Unfair Business Practices Act Is Not Restricted to Consumer Transactions

In essence, defendants argue that the California Unfair Business Practices Act [CUBPA] covers only consumer transactions, and that since they operate under cover of penal code sections, their unlawful threats and demands are beyond the scope of the Act.[10]  This argument is meritless argument.  Defendants would have this Court ignore both the extensive body of law interpreting the CUBPA and the clear language of the FDCPA.

Cal. Bus & Prof. Code § 17200 provides:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

---

10.  Defendants offer the gratuitous comment that "check-bouncers" are the moral opposite of consumers and that they are undermining the "social and moral order established by the American system of commerce."  Aside from the fact that these comments are out of place in a motion designed to test the pleadings, these comments turn the facts upside down.  A recent banking industry study showed that only about one in every two hundred checks does not clear.  Statistics compiled in the mid-1990's by Equifax Check Services, Inc. showed that most people who write insufficient funds checks do so inadvertently and the checks would clear if redeposited.  Collection agencies, however, actively discourage merchants from redepositing checks in order to increase the volume of checks that can successfully be collected.  As has been established in numerous cases against check collectors, only a few of which are cited in this memorandum, society needs to be protected from predatory check collectors, not from check writers who inadvertently write checks which do not clear.  In passing the FDCPA, Congress found that:  "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).

Chapter 1 (commencing with  section 17500) of Part 3 of Division 7 of the Business and Professions Code.

The Act authorizes courts to enjoin such conduct and order restitution of money or property obtained by means of unfair competition.  Bus. & Prof. Code § 17203.  Actions for relief under the Act can be prosecuted "by any person acting for the interests of itself, its members or the general public."  Bus. & Prof. Code § 17204.  It is noteworthy that prosecutions can be brought "on behalf of the general public" as opposed to "on behalf of consumers."

CUBPA codifies California public policy against unfair competition, and "prohibits wrongful business conduct *in whatever context such activity* might occur."  *Emphasis added*; *Committee on Children's Television v. General Foods Corp.,* 35 Cal. 3d 197, 209-210 (1983).  Unfair competition is defined broadly as any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The Act is interpreted broadly and allows lawsuits based on the public's right to protection from fraud, deceit and other unlawful conduct, as well as actions aimed at anti-competitive business practices.  *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F.Supp.2d 1068 (C.D. Cal. 1998). Through the California statutes governing unfair competition, the state Legislature intended to permit the courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur.  *Churchill Village, L.L.C. v. General Elec. Co.*, 169 F.Supp.2d 1119 (N.D.Cal. 2000).

The "unlawful" practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  *People v. McKale,* 25 Cal.3d 626, 632(1979).  It is not necessary that the predicate law provide for private civil enforcement.  *Samura v. Kaiser Foundation Health Plan, Inc.,* 17 Cal.App.4th 1284, 1299 (1993).  Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200 *et seq.*  *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383 (1992).  "Unfair" simply means any practice whose harm to the victim outweighs its benefits.

*Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735, 740 (1980).  "Fraudulent," as used in the statute, does not  refer to the common law tort of fraud but only requires a showing members of the public " 'are likely to be deceived.' "  *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1267 (1992).  Check collection by debt collectors is covered under the CUBPA.  *Ballard v. Equifax Check Services, Inc.*, 158 F.Supp.2d 1163, 1176 (E.D. Cal. 2001); *Irwin v. Mascott*, 112 F.Supp.2d 937, 955 (N.D.Cal. 2000). *Newman v. Checkrite California, Inc.,* 912 F. Supp. 1354, 1376, n. 31 (E.D. Cal. 1995). In fact, in *Irwin v. Mascott, supra,* the court applied the CUBPA to protect consumer and non-consumer check writers alike from debt collectors.  *Irwin v. Mascott*, 186 F.R.D. 567, 580 (N.D. Cal. 1999).

In the present case plaintiff alleges that ACCS is a business.  Its business practices are described in detail in the complaint.  These practices include the collection of unlawful fees, misrepresenting to check writers that it is actually the district attorney and making unlawful threats of prosecution.  Accepting the factual allegations as true for the purpose of the present motion, these practices meet the test of being unlawful, unfair or fraudulent.  Nothing more is required.  The fact that ACCS' business operates under contract with California district attorneys, supposedly administering a diversion program, does not make ACCS any less a business.

Defendants are not helped by *Blank v. Kirwin,* 39 Cal.3d 311 (1985).  That lawsuit was grounded in the claim that defendants engaged in a conspiracy to influence government action toward the legalization and monopolization of poker clubs.  The California Supreme Court ruled that the defendants alleged conduct could not properly be called a business practice.  Even if it could, it was not forbidden by law.  In the sentence partially excerpted in defendants' brief, the Supreme Court merely stated that: "A vertical relationship between the plaintiff's competitor and a third party does not support a cause of action for unfair competition as an illegal business practice absent, for example, allegations that the relationship is unlawful in itself or that it inflicts legal

injury on consumers." *Id.*, p. 239. Nowhere in that decision does the California Supreme Court restrict application of the CUBPA to consumers.

Plaintiff alleges that, on behalf of herself and the general public, she is seeking relief from the unlawful, unfair or fraudulent business practices of the ACCS defendants. She has generally and specifically alleged the nature of those business practices. The court must assume that the general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist., supra,* 37 F.3d 517. Plaintiff is not required to do anything more in order to withstand defendants' motion to dismiss.

**B.** **Defendants' Insistence that They Have Done Nothing Wrong Has No Bearing on Their Motion to Dismiss the Unfair Business Practices Act Claim, Since Defendants Raises A Factual Dispute That Cannot Be Resolved in a Fed.R.Civ.P. 12(b)(6) Motion**

Defendants argue that the CUBPA claim should be dismissed because they have done nothing that is not expressly authorized by the penal code. However, defendants' assertion is contradicted by the allegations in the Complaint, which must be accepted as true for purposes of this motion. As noted above, plaintiff alleges throughout the Complaint that defendants are acting far beyond the authority conferred by Penal Code §§ 1001.60 *et seq*.

Plaintiff is not attacking the validity of the statute. Plaintiff attacks defendants' abuse and violation of the statute. Penal Code § 1001.60 restricts use of the diversion program to those instances where the district attorney has determined that there is probable cause to believe there is a violation of Penal Code § 476a, that is probable cause that the check writer knowingly wrote an insufficient funds check with an intent to defraud. Prior to referral to diversion the district attorney is required to consider specified referral criteria. Penal Code § 1001.62. Plaintiff alleges, however, that check writers are referred to diversion without any investigation or probable cause determination. Complaint, pp. 10:19-11:6. Penal Code § 1001.65 enumerates charges which may be assessed against a check writer. Plaintiff alleges in her Complaint that

ACCS is collecting charges that are not authorized by law. Complaint, p. 10:18:19. Even defendants do not argue that it is lawful to overcharge check writers. The question of whether defendants' actions are authorized by statute will be resolved at a later stage in this lawsuit. For purposes of the pending motion to dismiss, however, plaintiff's allegations are sufficient to establish violations of the CUBPA.

## VII. ACCS' ATTEMPTS TO COLLECT CHECKS AND CHECK FEES CONSTITUTE "DEBT COLLECTION" WITHIN THE MEANING OF THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA covers governs the conduct of debt collectors. The FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. §§ 1692a(6).

Plaintiff has alleged that ACCS is a private business and its office and employees are located in San Clemente, CA. Complaint, p. 3:1-5. ACCS, acting as an independent contractor, entered into a contract with the Santa Clara County District Attorney to collect dishonored checks. Complaint, p. 4:10-13. The Santa Clara County District Attorney does not provide any meaningful supervision or control over ACCS' actions. Complaint, p. 10:19-23. In an effort to recover payment of dishonored checks plus fees, ACCS send collection demands on the letterhead of the Santa Clara County District Attorney. Exhibits 2, 3 and 4 to the Complaint. [11] Plaintiff has alleged that ACCS regularly collects and attempts to collect debts alleged to be due another, and has as its principle purpose the collection of debts using the mails and telephone. Complaint, p. 3:24-27.

---

11. The fact that ACCS contracts with a government agency does not exempt it from FDCPA coverage. *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 406 (3d Cir. 2000).

ACCS argues that though it may be collecting money, the money which it collects does not qualify as a debt. This argument must also be rejected. The FDCPA defines a debt as:

> ". . . any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. . . ." 15 U.S.C. § 1692a(5).

The collection of dishonored checks written for personal purposes is covered by the FDCPA. *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *See also Snow v. Jesse L. Riddle, P.C.*, 143 F.3d 1350 (10th Cir. 1998); *Duffy v. Landberg*, 133 F.3d 1120 (8th Cir. 1998); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997).

In the first letter sent to Ms. del Campo,[12] ACCS demanded that she pay, *inter alia*, the "check amount" of $95.02. Therefore, ACCS is seeking to collect on a check, a collection transaction covered by the FDCPA.

ACCS also seeks to collect various fees that it claims are due under the penal code. These are fees which are an "obligation or alleged obligation . . . to pay money arising out of [the check] transaction," and are clearly defined as "debts" under the FDCPA.

Again, concerning the collection fees charged by ACCS, the FDCPA, 15 U.S.C. § 1692f(1)[13] prohibits the collection of any amount over the face amount of a dishonored check unless the excess amount is expressly authorized by the agreement creating the debt or permitted by law. *Irwin v. Mascott*, 186 F.R.D. 567, 578 (E.D. Cal.), *citing Newman v. CheckRite of California, Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995).

---

12. Exhibit 2 to the Complaint.
13. 15 U.S.C. § 1692f(1) prohibits:
The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

The burden of proving a statutory exception falls on the party seeking to reap the benefits of the exception. *Irwin v. Mascott, id.* The "permitted by law" prong of the exception does not make any distinction between civil law and criminal law. Moreover, it is not accurate to characterize the fees which ACCS seeks to collect as sanctions for criminal conduct. These fees are assessed and collected by a private collection agency, prior to any investigation or probable cause determination of criminality by the district attorney and without criminal charges ever having been filed against the check writer. Since the fees arise from the collection of a consumer debt the FDCPA applies, however defendants may characterize the fees.

Moreover, it would undermine the purpose of the FDCPA to carve out an exception for debt collectors who, with or without justification, base their demands on penal code provisions. As noted by the Seventh Circuit,

> Indeed, *nothing* in the Act makes inquiry into the debtor's intent at the time he or she writes a subsequently-dishonored check. Its language focuses primarily, if not exclusively, on the conduct of debt collectors, not debtors. Absent some textual directive in the FDCPA, we will not alter that focus, for our task is to interpret the words of Congress, not add to them. *See Wilson v. United States*, 125 F.3d 1087, 1090 (7th Cir. 1997) ("It is a well-established principle that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations and internal quotations omitted); *Morse v. Republican Party of Virginia*, 517 U.S. 186, 276 n.18, 116 S. Ct. 1186, 1234 n.18, 134 L. Ed. 2d 347 (1996) (Thomas, J., dissenting) ("We are not free to construe statutes by wondering about what Congress 'would have wanted to enact.' There are myriad reasons why measures that 'a Congress' . . . might 'want to enact' never become law. We must look to the extant text of the statute and see what Congress has in fact, and not in theory, enacted."). Moreover, the express purpose of the Act is to forbid debt collectors from harassing, oppressing or abusing "*any* person"--not just "deserving" debtors--in the debt collection process. *See* 15 U.S.C. §§ 1692d; *see also* Bass, 111 F.3d at 1326. n7. To this we add that the FDCPA's legislative history reflects that Congress acknowledged there may be a "number of persons who *willfully* refuse to pay just debts," S. Rep. No. 382, 95th Cong., 1st Sess. 3 (*reprinted* in 1977 U.S. Code Cong. & Admin. News 1695, 1697) (emphasis added), but apparently "believed that the serious and widespread abuses" of debt collectors outweighed the necessity to carve out an exception for these so-called "deadbeats." *See id.* If the Act was designed to protect those who willfully refuse to pay their debts, it

makes little sense why consumers who write checks, knowing they will be dishonored, should not enjoy the same protections. *Keele v. Wexler*, 149 F.3d 589, 595-96 (7th Cir. 1998).

*See also*, *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997); *Irwin v. Mascott*, *supra*, 96 F.Supp.2d at 967. There is nothing in finding coverage under the FDCPA for non-governmental debt collectors that would as defendants suggest, "spell the end to a variety of important misdemeanor diversion programs." FDCPA coverage may, however, upset the operations of abusive collection agencies guilty of overcharging and fraud on a massive scale.

Presented with this same scenario, other courts have found FDCPA coverage. In *Liles v. American Corrective Counseling Services, Inc.*, 131 F.Supp.2d 1114 (S.D. IA 2001) this same defendant unsuccessfully argued that it was not liable as a private debt collector because it was assisting local prosecutors. In a similar case, the district court considering these cases determined that Check Enforcement Unit, Inc., an independent contractor collecting dishonored checks pursuant to a contract with Muskegon County, Michigan, was a "debt collector" under the FDCPA. *Gradisher v. Check Enforcement Unit, Inc.*, 133 F.Supp.2d 988, 990-92 (W.D. Mich. 2001) (denying defendant's motion for summary judgment); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 273 (W.D. Mich. 2001) (granting class certification).

Defendants reference to *Gruntz v. County of Los Angeles*, 202 F.3d 1074 (9th Cir. 2000) is misleading at best. The issue in that case was whether the automatic stay provisions of the Bankruptcy Act prohibited criminal prosecution for failure to make child support payments while he had a bankruptcy case pending. After he was convicted in state court he asked the Bankruptcy Court to determine that the entire action had violated the automatic stay and was therefore void. The Bankruptcy Court declined, concluding that it was collaterally estopped by the state court judgment. The District Court affirmed on the ground that the *Rooker-Feldman* doctrine precluded the bankruptcy court from re- determining an issue that had been decided by the state

court, *i.e.,* that the criminal prosecution was excepted from the automatic stay. The case was appealed to the Ninth Circuit on the issues of whether the state court had jurisdiction to determine the exceptions to the automatic stay and, if so, what preclusive effect such decisions must be given subsequently in bankruptcy courts. After two panel decisions the Ninth Circuit took the case up *en banc.* The *en banc* opinion stated that the question presented was "whether a state court *modification* of the bankruptcy automatic stay binds federal courts." 202 F.3d at 1077. It then concluded that state courts lack such jurisdiction due to "the bankruptcy court's plenary power over core proceedings," and because "any state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.* at 1082. The issues raised in *Gruntz*, although perhaps significant in bankruptcy cases, do not address the issue of whether an unpaid check and assorted collection fees are "debts" within the meaning of the FDCPA. Likewise, in *In re Byrd*, 265 Bankr. 246 (Bankr. E.D.N.C. 2000) Byrd had written $28,000.00 in bad checks to two Nevada casinos. He was arrested for this crime and released from jail upon payment of $31,140.00 as bail. The Clark County district attorney then made a prosecutorial decision to dismiss the indictment and use the bail money to pay the casinos for the checks. The court found that the money paid to the district attorney, and ultimately disbursed to the casinos, was a non-dischargable "fine, penalty or forfeiture" under Bankr. Code, 11 U.S.C.A. § 523(a)(7). The FDCPA does not contain any exemptions for fees that are claimed to be fines, penalties or forfeitures. *See e.g. Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 385 (3d Cir. 2000) in which unpaid water bills, interest and penalties were debts subject to the FDCPA.

These two bankruptcy cases are inapposite because there is no need to resort to Bankruptcy Code provisions in order to interpret the FDCPA. Significantly, both cases arose where prosecution of the alleged debtor had already commenced. In the present case ACCS' collection activities take place prior to prosecution. In fact, the crux of the

problems with ACCS' collection scheme is that it takes place without any determination that there has been any criminal conduct.  Based on a straightforward reading of the definition section of the FDCPA, the collection conduct alleged in the complaint is covered.

**VIII.  CONCLUSION**

It is one thing for a prosecutor to investigate allegations of criminal conduct, arrest or indict the criminal suspect and then offer diversion in lieu of prosecution.  It is quite another to hand virtually total control of a check diversion program to a private, for-profit, collection agency and allow it to masquerade as a branch of the district attorney's office while the collection agency fraudulently threatens and overcharges check writers.

WHEREFORE, plaintiff respectfully requests that the present motion be denied in its entirety.

Dated:  April 8, 2002                          LAW OFFICE OF PAUL ARONS


By_____
        Paul Arons
        Attorneys for Plaintiff

ATTACHMENT ONE

Cal. Penal Code §§ 1001.60 *et seq.*

**Cal Pen Code § 1001.60.  Creation of program; Adoption of ordinance by board of supervisors**

Upon the adoption of a resolution by the board of supervisors declaring that there are sufficient funds available to fund the program, the district attorney may create within his office a diversion program pursuant to this chapter for persons who write bad checks. For purposes of this chapter, "writing a bad check" means making, drawing, uttering, or delivering any check or draft upon any bank or depository for the payment of money where there is probable cause to believe there has been a violation of Section 476a. The program may be conducted by the district attorney or by a private entity under contract with the district attorney.

HISTORY:  Added Stats 1985 ch 1059 § 1.


**Cal Pen Code § 1001.61.  Referral of cases**

The district attorney may refer a bad check case to the diversion program. Except as provided in Section 1001.64, this chapter does not limit the power of the district attorney to prosecute bad check complaints.

HISTORY:  Added Stats 1985 ch 1059 § 1


**Cal Pen Code § 1001.62.  Referral criteria**

On receipt of a bad check case, the district attorney shall determine if the case is one which is appropriate to be referred to the bad check diversion program. In determining whether to refer a case to the bad check diversion program, the district attorney shall consider, but is not limited to, all of the following:

(a) The amount of the bad check.

(b) If the person has a prior criminal record or has previously been diverted.

(c) The number of bad check grievances against the person previously received by the district attorney.

(d) Whether there are other bad check grievances currently pending against the person.

(e) The strength of the evidence, if any, of intent to defraud the victim.

HISTORY:  Added Stats 1985 ch 1059 § 1.

**Cal Pen Code § 1001.63.  Notice to accused**

On referral of a bad check case to the diversion program, a notice shall be forwarded by mail to the person alleged to have written the bad check which contains all of the following:

   (a) The date and amount of the bad check.

   (b) The name of the payee.

   (c) The date before which the person must contact the person designated by the district attorney concerning the bad check.

   (d) A statement of the penalty for issuance of a bad check.

HISTORY:  Added Stats 1985 ch 1059 § 1.


**Cal Pen Code § 1001.64.  Terms of agreement to forego prosecution**

The district attorney may enter into a written agreement with the person to forego prosecution on the bad check for a period to be determined by the district attorney, not to exceed six months, pending all of the following:

   (a) Completion of a class or classes conducted by the district attorney or private entity under contract with the district attorney.

   (b) Full restitution being made to the victim of the bad check.

   (c) Full payment of the collection fee, if any, specified in Section 1001.65.

HISTORY:  Added Stats 1985 ch 1059 § 1.


**Cal Pen Code § 1001.65.  Bad check**

   (a) A district attorney may collect a fee if his or her office collects and processes a bad check.  The amount of the fee shall not exceed thirty-five ($35) for each bad check in addition to the actual amount of any bank charges incurred by the victim as a result of the offense.

   (b) Notwithstanding subdivision (a), when a criminal complaint is filed in a bad check case after the maker of the check fails to comply with the terms of the bad

check diversion program, the court, after conviction, may impose a bad check collection fee for the collection and processing efforts by the district attorney of not more than thirty-five ($35) for each bad check in addition to the actual amount of any bank charges incurred by the victim as a result of the offense, not to exceed one thousand dollars ($1,000) in the aggregate. The court also may, as a condition of probation, require a defendant to participate in and successfully complete a check writing education class.  If so required, the court shall make inquiry into the financial condition of the defendant and, upon a finding that the defendant is able in whole or part to pay the expense of the education class, the court may order him or her to pay for all or part of that expense.

  (c) If the district attorney elects to collect any fee for bank charges incurred by the victim pursuant to this section, that fee shall be paid to the victim for any bank fees that the victim may have been assessed. In no event shall reimbursement of a bank charge to the victim pursuant to subdivision (a) or (b) exceed ten dollars ($10) per check.

  (d) On or before January 1, 1998, the Judicial Council shall prepare a report on the effect of the amendments to this section enacted at the 1995-96 Regular Session of the Legislature, and submit that report to the Senate and Assembly Judiciary Committees.

  HISTORY:
  Added Stats 1985 ch 1059 § 1. Amended Stats 1988 ch 1036 § 2; Stats 1992 ch 251 § 1 (AB 3268); Stats 1993 ch 589 § 120 (AB 2211); Stats 1996 ch 996 § 1 (SB 1502); Stats 1998 ch 522 § 1 (SB 1679), effective September 15, 1998.

NOTES: FORMER SECTIONS:
  Former § 1001.65, similar to the present section, was added Stats 1996 ch 996 § 1.4 and repealed Stats 1998 ch 522 § 2, effective September 15, 1998.

AMENDMENTS:
  1988 Amendment:
  (1) Designated the former section to be subd (a); (2) added subd (b).
  1992 Amendment:
  Added (1) "in addition to the actual amount of any bank charges incurred by the victim as a result of the offense" after "each bad check" in the second sentence of subd (a); and (2) added subd (c).
  1993 Amendment:
  Routine code maintenance.
  1996 Amendment:
  (1) Substituted "thirty-five ($35)" for "twenty-five ($25)" in subd (a); (2) substituted "when a criminal complaint is filed in a bad check case after the maker of the check fails to comply with the terms of the bad check diversion program, the court, after conviction, may impose a bad check collection fee for the collection and processing efforts by the district attorney of not more than thirty-five ($35)" for "if a bad check case is not referred to a diversion program pursuant to this chapter, the court may impose a bad check collection fee for the collection and processing of a bad check by the district attorney of not more than twenty-five dollars ($25)" in the first sentence of subd (b); and (3) added subds (d) and (e).
  1998 Amendment:

Deleted former subd (e) which read: " (e) This section shall remain in effect only until January 1, 1999, and as of that date is repealed, unless a later enacted statute, that is enacted on or before January 1, 1999, deletes or extends that date.

## Cal Pen Code § 1001.66.  Admission of guilt not required

At no time shall a defendant be required to make an admission of guilt as a prerequisite for placement in a precomplaint diversion program.

HISTORY:  Added Stats 1985 ch 1059 § 1.

## Cal Pen Code § 1001.67 Inadmissibility of evidence

No statement, or information procured therefrom, made by the defendant in connection with the determination of his or her eligibility for diversion, and no statement, or information procured therefrom, made by the defendant, subsequent to the granting of diversion or while participating in the program, and no information contained in any report made with respect thereto, and no statement or other information concerning the defendant's participation in the program shall be admissible in any action or proceeding.

HISTORY:  Added Stats 1985 ch 1059 § 1.

§ 1001.68.  [Section repealed 1987.]

HISTORY:  Added Stats 1985 ch 1059 § 1. Repealed, operative January 1, 1987, by its own terms. The repealed section related to counties eligible to operate pilot projects.

ATTACHMENT TWO

ACCS 10/03/01 Letter to Elena del Campo



Seq. 552 Trav 0017
**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# OFFICIAL NOTICE

II.III.II.II.IIII.II.II.III.II.II.II.IIIII.II.II.IIIII.II.II.IIIII.II.II
ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 10/03/01

Case #: SCC 102496-00

PLEASE READ THIS NOTICE CAREFULLY. The Santa Clara County District Attorney's Office has
received an INCIDENT REPORT  alleging you have violated Penal Code 476(a) of the California
State Statute; Passing a Worthless Check.   A conviction under this statute is punishable by up to six (6)
months in county jail and up to $1,000 in fines. See PART 2 of the information pages attached to this
Notice about the party(s) filing this crime report.

YOU MAY AVOID A COURT APPEARANCE if you agree to enroll in the Santa Clara County District
Attorney's Bad Check Restitution Program.   California Penal Code Sections 1001.60-1001.65 authorize
District Attorneys to make this offer to individuals that comply with the following Program requirements:

  1. Complete the Santa Clara County District Attorney's mandatory one-day educational class
     on Financial Accountability.

  2. Pay FULL restitution for all reported checks, PLUS all applicable administrative, returned item,
     and program fees.

Program enrollment is OPTIONAL.  You may wish to consult an attorney to obtain legal advice about your
rights in regards to this matter. The District Attorney is extending an opportunity to participate in a pre-trial
misdemeanor diversion program as an alternative to appearing in court. The District Attorney does not require
you to enter any form of plea in exchange for Program participation, and participation is NOT an admission
of guilt.

The Bad Check Restitution Program is designed to bring a fast resolution to this matter.  Program
completion requires payment of the appropriate restitution and fees and attendance in a one-day class,
typically 8:00am - 4:30pm on a Saturday. If you successfully comply, you will receive a notice of completion
from the District Attorney and  THERE WILL BE NO CRIMINAL, POLICE, OR COURT RECORD OF
THIS MATTER!

WARNING - Completion of the Bad Check Restitution Program is valid ONLY if you comply with ALL
District Attorney requirements. Failure to comply with payment of restitution and fees, or class
attendance may subject you to criminal court proceedings.

For Program enrollment and payment information, please review PART 1 of the next page. If you believe
you received this Notice in error,  please read PART 3 of the instructions before calling this office.

Signed,

Bruce D. Raye

Bruce D. Raye
Criminal Investigator
Santa Clara County District Attorney's Office

**PLAINTIFF'S
EXHIBIT**

2

Seq: 552 Tray: 0017

## PART 2 - INCIDENT REPORT INFORMATION

Page 3

| VICTIM | CASE # | CHECK # | CHECK AMOUNT | RETURNED ITEM FEE | ADMIN FEE | TOTAL THIS CHECK |
|--------|--------|---------|--------------|-------------------|-----------|------------------|
| FRYS ELECTRONICS #03 | 102496 | 1610 | $95.02 | $10.00 | $35.00 | $140.02 |

PROGRAM FEE:      $125.00

### TOTAL BALANCE DUE:      $265.02

NOTE: You may deduct $25.00 from the Program Fee if your FULL PAYMENT is POSTMARKED by: November 3, 2001.

Do not attempt to contact the business or party who filed the Report.
THIS CASE MUST NOW BE RESOLVED THROUGH THIS OFFICE!

## PART 3 - IMPORTANT INFORMATION          Please Read Carefully

● **IF YOU BELIEVE YOU RECEIVED THIS NOTICE IN ERROR**

STEP 1 -   Review your records CAREFULLY.

STEP 2 -   Call the District Attorney's Bad Check Restitution Program Office at **(800) 931-9720.**

STEP 3 -   Ask for a Case Coordinator, explain the error.

STEP 4 -   The Case Coordinator will ask you to mail in documentation of the error. If you did not write the check(s), you will be asked to go to your bank to obtain and sign an affidavit that you did not write the check(s) in question. In most cases, you will also be required to file a police report if you believe the check(s) were stolen or forged. With cases involving stop payments on checks, or performance disputes, please consult a Case Coordinator for more information.

STEP 5 -   Mail in your case documentation to:   **Santa Clara County District Attorney**
                                                      **Bad Check Restitution Program**
                                                      **1765 Landess Ave. PMB 150**
                                                      **Milpitas, CA 95035-7019**

Note: Personal bankruptcies DO NOT void responsibility in a criminal matter. Contact our office for details, or consult an attorney.

● **IF YOU BELIEVE YOU WERE NOT PROPERLY NOTIFIED**

The District Attorney's Office accepts ONLY bad check incident reports from those businesses, or parties that have DOCUMENTED attempts to notify you according to California State law. In addition to notification from the party you issued the check to, banks routinely send customers notice of returned items. Non-sufficient funds checks also appear on your monthly account statement. **CHECK YOUR RECORDS CAREFULLY BEFORE CONTACTING THIS OFFICE.**

● **IF YOU HAVE ALREADY PAID THE MERCHANT, OR FILING PARTY**

Please mail documentation that the merchant or filing party received payment BEFORE the date of this Notice. Allow the Office fourteen (14) days to process your information before calling. Our Office will determine the appropriate course of action and contact you by phone and/or letter.

● **IF YOU WANT TO APPEAR IN COURT**

If you want to contest this action and appear in court, you may want to consult an attorney. Contact this office and inform us of your decision. The District Attorney's Office or Court will send additional information and instructions on how to prepare for a Court appearance.

### FOR ADDITIONAL INFORMATION CALL  (800) 931-9720

Seq. 552 Tray 0017

## PART 1 - PROGRAM ENROLLMENT

Page 2

IF YOU WISH TO ENROLL IN THE DISTRICT ATTORNEY'S BAD CHECK RESTITUTION PROGRAM, COMPLETE THE ENROLLMENT FORM BELOW:

### ENROLLMENT FORM
*(Please Return This Page With Your Payment)*

Case # SCC 102496-00

Name: ELENA M DEL CAMPO                 TOTAL BALANCE DUE:  **$265.02**

Address: _____    Phone: _____

_____         DL#: _____

City/State/Zip _____       SS#: _____
☐  *Is this a new address?*

*Select Payment Option Below:*

☐  I wish to PAY IN FULL by November 3, 2001 and deduct $25.00 from the Program Fee. I have deducted $25.00 from the TOTAL BALANCE DUE and **I am enclosing $240.02.**

☐  I am requesting an automatic payment extension. I am enclosing $132.51 which is 1/2 of the total balance and the remaining balance of $132.51 will be paid by December 2, 2001.

**ALL PAYMENTS MUST BE POSTMARKED BY THE DATES INDICATED!** For additional information regarding payments, please call **(800) 931-9720.**

**Make payments payable to:**
Santa Clara County District Attorney       NOTE: Mail payments by MONEY ORDER, or
1765 Landess Ave. PMB 150                  CASHIER'S CHECK ONLY!
Milpitas, CA 95035-7019                    NO PERSONAL CHECKS ACCEPTED!
*(This is not a walk-in office)*

### FINANCIAL ACCOUNTABILITY CLASS SCHEDULE INFORMATION

Please indicate which Class you wish to attend by placing the #1 in front of the class date. Please choose an alternate date by placing #2 in front of that date in case your first choice is not available as classes are subject to availability. Classes are scheduled on a first come first serve basis.

_____ Saturday November 17, 2001  8:00 am  4:30 pm.    _____ Saturday December 1, 2001  8:00 am - 4:30 pm

OUR OFFICE WILL MAIL CONFIRMATION OF YOUR CLASS, ALONG WITH DIRECTIONS TO THE CLASS LOCATION. Please bring your confirmation letter, a pen or pencil, and picture indentification for admittance to the class. Should you not receive confirmation of your requested class by ten (10) working days prior to class, please call **(800) 931-9720.**

*Special Note: If you have a medical condition that may prevent your attendance in class, please mail in a note from your physician stating your condition and treatment prognosis BEFORE your payment deadline.*

By my signature I hereby enroll in the Bad Check Restitution Program and agree to all terms and conditions.

_____                    SCC 102496    100301
ELENA M DEL CAMPO

ATTACHMENT THREE

ACCS 11/07/01 Letter to Elena del Campo

Seq  848 Tray 0016



**Santa Clara Coun\_\_District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# NOTICE OF FAILURE TO COMPLY

IlIıIııIıIIIıııIIıııIııIııIIIıııIıIIlıIıııIıIıIIlI
ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 11/07/01

Case #: SCC 102496-16

OUR RECORDS INDICATE THAT YOU HAVE FAILED TO RESPOND TO A
PREVIOUS NOTICE REGARDING AN INCIDENT REPORT FILED WITH
THIS OFFICE.

Your failure to respond may now result in the filing of this incident report
by the District Attorney in MUNICIPAL COURT!

CALL THIS OFFICE IMMEDIATELY TO OBTAIN INSTRUCTIONS ON
SCHEDULING YOUR EDUCATION CLASS, AND PAYING THE BALANCE OF
YOUR CASE IF YOU WISH TO PREVENT THIS ACTION!  CALL
**(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**R. D. Davis**
Case Coordinator

Document 115

**PLAINTIFF'S
EXHIBIT**

3

ATTACHMENT FOUR


ACCS 12/05/01 Letter to Elena del Campo



Seq  848 Tray  0016

**Santa Clara Coun____District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# NOTICE OF FAILURE TO COMPLY

IıIııIııIIIıııIIııIııIııIIıııIıIIıIıııIıIIıIıııIıIIıIıII

ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 11/07/01

Case #: SCC 102496-16

OUR RECORDS INDICATE THAT YOU HAVE FAILED TO RESPOND TO A
PREVIOUS NOTICE REGARDING AN INCIDENT REPORT FILED WITH
THIS OFFICE.

Your failure to respond may now result in the filing of this incident report
by the District Attorney in MUNICIPAL COURT!

CALL THIS OFFICE IMMEDIATELY TO OBTAIN INSTRUCTIONS ON
SCHEDULING YOUR EDUCATION CLASS, AND PAYING THE BALANCE OF
YOUR CASE IF YOU WISH TO PREVENT THIS ACTION!  CALL
**(800) 931-9720.**

Office hours: Monday - Friday 8:00 am - 6:00 pm.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Sincerely,

**R. D. Davis**
Case Coordinator

Document 115

**PLAINTIFF'S
EXHIBIT**

3



Seq  030 Tray  0017
**Santa Clara County District Attorney**
**Bad Check Restitution Program**
1765 Landess Ave PMB 150
Milpitas CA 95035-7019

**George Kennedy**
District Attorney

# OFFICIAL NOTICE

ELENA M DEL CAMPO
PO BOX 292
REDWOOD CITY CA 94064-0292

Date of Notice: 12/05/01

Case #: SCC 102496-16



Please contact this office prior to  12/19/01  regarding incident reports
involving California Penal Code Section 476(a), "Passing a Worthless Check".  Prior
attempts to resolve this situation have been unsuccessful.

**Failure to contact this office may now result in criminal prosecution
proceedings being pursued.**  The amount below reflects the total balance to
discharge your incident report as of the date of this letter.

### CASE BALANCE: $170.00

If you wish to prevent any further action against you by this office, call
**(800) 931-9720** during the hours listed below.  After hours, please leave
a message on how we may contact you regarding the disposition of your case.

PAYMENTS ACCEPTED BY MONEY ORDER OR CASHIER'S CHECK ONLY!

Office hours: Monday - Friday 8:00 am - 6:00 pm.

Thank you for your immediate response to this letter!

Sincerely,

**R. D. Davis**
Case Coordinator

Document 118

**PLAINTIFF'S
EXHIBIT
4**