KELLI L. SAGER (State Bar No. 120162)
JEFF GLASSER (State Bar No. 252596)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
kellisager@dwt.com; jeffglasser@dwt.com

THOMAS R. BURKE (CA State Bar No. 141930)
DUFFY CAROLAN (State Bar No. 154988)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 941111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
duffycarolan@dwt.com

Attorneys for Non-Party Press Organizations
THE ASSOCIATED PRESS, ESPN, HEARST CORPORATION, C,
THE NEW YORK TIMES COMPANY, KNTV TELEVISION, INC., and NBC SUBSIDIARY
(KNBC-TV), INC., LOS ANGELES TIMES COMMUNICATIONS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **CR 07-0732 SI** |
| Plaintiff(s), | **EX PARTE APPLICATION FOR ORDER SHORTENING TIME TO HEAR MOTION TO VACATE ORDER SEALING COMPLETED JUROR QUESTIONNAIRES AND FOR IMMEDIATE AND CONCURRENT ACCESS TO COMPLETED JUROR QUESTIONNAIRES; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DUFFY CAROLAN** |
| vs. | |
| BARRY LAMAR BONDS, | |
| Defendant(s). | |
| | Date: February 27, 2009 |
| | Time: 10:15 a.m. |
| | Assigned to the Hon. Susan Illston, Courtroom 10 |

# TABLE OF CONTENTS

Page

EX PARTE APPLICATION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 4

I. SUMMARY OF ARGUMENT .............................................................................. 4

II. VOIR DIRE IS PRESUMPTIVELY OPEN TO THE PUBLIC AND
PRESS UNDER THE FIRST AMENDMENT ...................................................... 5

III. THE NECESSARY ON-THE-RECORD FINDS JUSTIFYING SEALING OF
THE COMPLETED JUROR QUESTIONNAIRES CANNOT BE MADE IN THIS
CASE ....................................................................................................................... 7

IV. CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

Page

**CASES**

ABC, Inc. v. Stewart,
    360 F.3d 90 (2d Cir. 2004).................................................................................................5

Beckman Industries, Inc. v. Int'l Ins. Co.,
    966 F.2d 470 (9th Cir. 1992) ..............................................................................................5

Bellas v. Superior Court,
    85 Cal. App. 4th 636, 102 Cal. Rptr. 2d 380 (2000).................................................. 4, 6, 8

California ex rel. Lockyer v. Safeway, Inc., et al,
    355 F. Supp. 2d 1111 (C.D. Cal. 2005) .............................................................................6

California First Amendment Coalition v. Woodford,
    299 F. 3d 868 (9th Cir. 2002) .............................................................................................6

CBS, Inc. v. District Court,
    765 F.2d 823 (9th Cir. 1985) ..............................................................................................6

Copley Press, Inc. v. Superior Court,
    228 Cal. App. 3d 77, 278 Cal. Rptr. 443 (1991)........................................................ 4, 6, 7

Foltz v. State Farm Mutual Auto Ins. Co.,
    331 F.3d 1122 (9th Cir. 2003) ............................................................................................6

Globe Newspaper Co. v. Superior Court,
    457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)....................................................5

In re Associated Press,
    162 F.3d 503 (7th Cir. 1998) ..............................................................................................5

In re Globe Newspaper Co.,
    920 F.2d 88 (1st Cir. 1990) ................................................................................................8

In re Knight Publishing Co.,
    743 F.2d 231 (4th Cir. 1984) ..............................................................................................5

Lesher Communications, Inc. v. Superior Court,
    224 Cal. App. 3d 774, 274 Cal. Rptr. 154 (1990)...................................................... 4, 6, 7

NBC Subsidiary (KNBC-TV), Inc. v. Superior Court,
    20 Cal. 4th 1178 (1999) .................................................................................................5, 6

Oregonian Publ. Co. v. United States District Court,
    920 F.2d 1462 (9th Cir. 1990) ............................................................................................6

Press-Enterprise v. Superior Court,
    464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) .................................................. 4, 5, 7, 9

Richmond Newspapers, Inc. v. Virginia,
    448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) ............................................................. 5

San Jose Mercury News, Inc. v. United States District Court,
    187 F.3d 1096 (9th Cir. 1992) ..................................................................................................... 6

U.S. v. Brooklier,
    685 F.2d 1162 (9th Cir. 1982) ..................................................................................................... 6

U.S. v. King,
    140 F. 3d 76 (2d Cir. 1998) ..................................................................................................... 4, 7

U.S. v. McDade,
    929 F. Supp. 815 (E.D. Pa. 1996) ............................................................................................... 7

U.S. v. Wecht,
    537 F.3d 222 (3d Cir. 2008) .................................................................................................... 7, 8

Application of The Washington Post,
    1992 WL 233354 (D.D.C. July 23, 1992)

**OTHER AUTHORITIES**

Criminal Rule 55-1 ............................................................................................................................. 8

U.S. Const. amend. I ................................................................................................................... passim

Local Rule 42-3 .................................................................................................................................. 2

Local Rule 79-5 .................................................................................................................................. 8

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Non-party news organizations The Associated Press, ESPN, Hearst Corp. (publisher of the *San Francisco Chronicle*), The New York Times Company (publisher of the *Santa Rosa Press Democrat*), KNTV Television, Inc., NBC Subsidiary (KNBC-TV), Inc., and Los Angeles Times Communication LLC (collectively, the "Press Organizations") hereby submit the following ex parte application for an order shortening time to hear a motion to vacate the order sealing completed juror questionnaires and for immediate and concurrent access to the completed juror questionnaires in this action.[1] This ex parte application is necessary as the jury selection process is scheduled to being on Monday, March 3, 2003, and the Press Organizations consider it necessary to be heard on the matter before the Court makes any representations to prospective jurors regarding the confidential treatment of the completed jury questionnaires, representations that the jury may rely on in completing the questionnaires. This application is also necessary as a regularly noticed motion would not have been possible given the time between when the Court issued its February 19, 2009 order and the start of trial, and considering that counsel for the Press Organizations was retained on Tuesday, February 23, 2009.

To facilitate the hearing on this ex parte application and request to have the underlying motion heard on February 27, 2008 at 10:15 a.m., the memorandum of points and authorities in support of the underlying motion is attached hereto. As set forth in that memorandum, completed juror questionnaires are an integral part of the voir dire process, and therefore are subject to the constitutional and common law presumption of public access that attaches to court records and proceedings. See, e.g., Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509-510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) ("Press-Enterprise I") (voir dire is subject to constitutional right of access); Bellas v. Superior Court, 85 Cal. App. 4th 636, 645, 102 Cal. Rptr. 2d 380, 386-387

---

[1] The United States Supreme Court has held that the press has standing to assert the public's – and its own – right of access to various court records and proceedings. See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 610 n.25 (1982) (newspaper has right to be heard on issue of exclusion from court proceedings). Therefore, the Press Organizations should be permitted to intervene in this matter for the limited purpose of vindicating the public's right of access to the proceedings and documents.

(2000) (juror questionnaires are subject to First Amendment right of access); Copley Press, Inc. v. Superior Court, 228 Cal. App. 3d 77, 87-88, 278 Cal. Rptr. 443, 450-451 (1991) (same); Lesher Communications, Inc. v. Superior Court, 224 Cal. App. 3d 774, 778-779, 274 Cal. Rptr. 154, 156-157 (1990) (same); see also U.S. v. King, 140 F. 3d 76 (2d Cir. 1998) (same).

It does not appear that the parties have made any requests to seal these materials, nor does it appear that the Court issued findings that the constitutional and common law requirements for overcoming the presumption of public access have been met.[2] Consequently, these documents should be accessible to the public, and the Court should vacate its one-sentence order sealing them.

The Press Organizations respectfully request a hearing on this application on Friday, February 27, 2009, at 10:15 a.m., when the parties will be back before the Court in this matter, or alternatively, at 11 a.m. this same day, in conjunction with the Court's regular law and motion calendar.

As set forth in more detail below, the Court's denial of public access to juror questionnaires even for a limited time constitutes irreparable injury to the First Amendment right of the public and press to inspect presumptively open court records in an ongoing criminal trial. See Associated Press v. District Court, 705 F.2d 1143, 1147 (9th Cir. 1983) (vacating a temporary sealing order and recognizing that a 48-hour delay in public access to presumptively public criminal court records "is a total restraint on the public's first amendment right of access even though the restraint is limited in time" and justified issuance of writ of mandamus). Consequently, immediate action by the Court in advance of any representation to the venire panel regarding confidentiality over the completed questionnaires, is warranted.

---

[2] The First Amendment requires that, before court proceedings may be closed or records sealed, there must be notice and an opportunity to be heard on the sealing issue, the Court must make specific, on-the-record findings of a compelling need for sealing, and any sealing order must be narrowly tailored to address the specific compelling need that has been identified. Press-Enterprise I, 464 U.S. at 510-511; Copley, 228 Cal. App. 3d at 84; NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal. 4th 1178, 1181, 86 Cal. Rptr. 2d 778, 782 (1999).

| | |
|---|---|
| 1 | These grounds are amplified in the accompanying Memorandum of Points and |
| 2 | Authorities. This Application also is based on all pleadings, records, and files in this case, on all |
| 3 | matters of which judicial notice may be taken, and on such argument as may be presented at a |
| 4 | hearing on this Application. |
| 5 | Pursuant to Local Rule 42-3, between 2:00 p.m. and 5:00 p.m. on February 25, 2009, |
| 6 | counsel for the Press Organizations telephoned counsel for the defense and prosecution and |
| 7 | notified them of this Application. These individuals are Jeffrey David Nedrow and Matthew A. |
| 8 | Parrella of the U.S. Attorney's office, 150 Almaden Blvd., Suite 900, San Jose, CA 95113, |
| 9 | telephone number 408-535-5045; Allen Ruby, 125 S. Market Street #1001, San Jose, CA 95113, |
| 10 | telephone number (408) 998-8500; Cristinga Arguedas of Arguedas, Cassman & Headley, LLP, |
| 11 | 803 Hearst Avenue, Berkeley, CA 94710, telephone number (510) 845-3000; and Michael Rains |
| 12 | of Rains, Lucia & Wilkinson, LLP, 2300 Contra Costa Blvd., Suite 230, Pleasant Hill, California |
| 13 | 94523, telephone number (925) 609-1699. |
| 14 | For all the reasons set forth above, and in the attached Memorandum, the Press |
| 15 | Organizations respectfully request this Court to grant its application for an order shortening time, |
| 16 | hear the underlying motion and vacate its order sealing the completed juror questionnaires and |
| 17 | grant immediate and concurrent access to the completed questionnaires. |

DATED: February 26, 2009

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
THOMAS R. BURKE
DUFFY CAROLAN
JEFF GLASSER

By: _____
/ Duffy Carolan

Attorneys for Non-Party News Organizations
THE ASSOCIATED PRESS, ESPN, HEARST
CORP., THE NEW YORK TIMES COMPANY,
KNTV TELEVISION, INC., NBC SUBSIDIARY
(KNBC-TV), INC., and LOS ANGELES TIMES
COMMUNICATIONS, LLC

# MEMORANDUM OF POINTS OF AUTHORITIES

## I.

## SUMMARY OF ARGUMENT

More than two decades ago, the United States Supreme Court held unequivocally that the constitutional right of access to criminal trials includes access to the process by which jurors are selected. Press-Enterprise v. Superior Court, 464 U.S. 501, 509-510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) ("Press-Enterprise I") (First Amendment right of access applies to voir dire). Not surprisingly, since the use of written juror questionnaires is merely an adjunct of the oral voir dire process, courts in California and elsewhere repeatedly have applied the same constitutional right of access to questionnaires submitted to and completed by prospective jurors. See, e.g., Bellas v. Superior Court, 85 Cal. App. 4th 636, 645, 102 Cal. Rptr. 2d 380, 386-387 (2000) (right of access applies to written questionnaires); Copley Press, Inc. v. Superior Court, 228 Cal. App. 3d 77, 87-88, 278 Cal. Rptr. 443, 450-451 (1991) (same); Lesher Communications, Inc. v. Superior Court, 224 Cal. App. 3d 774, 778-779, 274 Cal. Rptr. 154, 156-157 (1990) (same); U.S. v. King, 140 F. 3d 76 (2d Cir. 1998) (same).

On February 19, 2009, the Court included the following sentence in its Pre-Trial Scheduling Order: "All completed questionnaires will be filed and retained under seal." As far as the Press Organizations are aware, no party made a formal request to seal the questionnaires, the Court did not notice and provide an opportunity to be heard on the sealing issue, and the Court did not make specific, on-the-record findings demonstrating a compelling need for sealing and narrowly tailoring the order to address the compelling need. Press-Enterprise I, 464 U.S. at 510-511. Because the Court's order is inconsistent with the constitutional presumption of access that applies to these records, and because, in any event, there is no compelling justification that could satisfy the strict constitutional standards for sealing court records, the Press Organizations respectfully request that this Court vacate its order sealing the juror questionnaires once completed and grant immediate and concurrent access to the questionnaires.[3]

---

[3] The United States Supreme Court has held that the press has standing to object to orders restricting public and press access to court proceedings. In Globe Newspaper Co. v. Superior

## II.

## VOIR DIRE IS PRESUMPTIVELY OPEN TO THE PUBLIC AND PRESS UNDER THE FIRST AMENDMENT

The public's constitutional right of access to criminal proceedings was recognized by the United States Supreme Court in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). In that case, the Court emphasized that a presumption of open judicial proceedings has "long been recognized as an indispensable attribute of an Anglo-American trial." Id. at 569. "From this unbroken, uncontradicted history, supported by reasons as valid today as in centuries past, we are bound to conclude that a presumption of openness inheres in the very nature of a criminal trial under our system of justice." Id. at 573.

As indicated above, the Supreme Court also has held explicitly that this First Amendment right of public access to criminal trials applies to voir dire proceedings – even in a trial of a defendant charged with murdering and raping a teenaged girl, where jurors were asked personal and sensitive questions about rape and sex. Press-Enterprise I, 464 U.S. at 509-510; see also ABC, Inc. v. Stewart, 360 F.3d 90, 99-100, 106 (2d Cir. 2004) (order barring press from attending oral voir dire violated the First Amendment); NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal. 4th 1178, 1203-1205 (1999) (affirming that court proceedings, including voir dire, are presumptively open). As the Court stated in Press-Enterprise I, 464 U.S. at 505-08, the "process of selection of jurors has presumptively been a public process" in the American justice system.

Although the Ninth Circuit has not yet addressed the specific issue of juror questionnaires, it repeatedly has held that the First Amendment provides a right of public access that attaches to

---

Court, 457 U.S. 596, 609 n.25, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982), the Court emphasized that under First Amendment, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from judicial proceedings. The Ninth Circuit also has recognized that non-parties may intervene for the purpose of challenging any limitation on the First Amendment right of access. Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992); see also In re Associated Press, 162 F.3d 503, 508 (7th Cir. 1998) ("Associated Press II") ("the Press ought to have been able to intervene in order to present arguments against limitations on the constitutional or common law right of access"); In re Knight Publishing Co., 743 F.2d 231, 234 (4th Cir. 1984) ("'representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion'" from proceedings or access to documents) (quoting Globe, 457 U.S. at 609 n.25).

<u>all</u> records filed in criminal proceedings, including voir dire. As then-Judge Kennedy instructed more than twenty years ago, the Ninth Circuit recognizes a broad "presumption that the public and the press have a right to access to criminal proceedings and the documents filed therein," which "extends to documents filed in pretrial proceedings as well as in the trial itself." CBS, Inc. v. District Court, 765 F.2d 823, 825 (9th Cir. 1985). Such "criminal proceedings" include voir dire. See, e.g., California First Amendment Coalition v. Woodford, 299 F. 3d 868, 873 (9th Cir. 2002) (recognizing that "[i]t is well-settled that the First Amendment guarantees the public – and the press – a qualified right of access to governmental proceedings"); U.S. v. Brooklier, 685 F.2d 1162, 1167 (9th Cir. 1982) (holding that "voir dire is generally considered 'part of the trial itself'").[4]

The use of written jury questionnaires has become popular as a means of expediting oral voir dire, but there can be no doubt that it is a part of voir dire. Consequently, it is not surprising that California courts explicitly have found that the First Amendment right of access to voir dire proceedings covers written juror questionnaires as well. See Bellas, 85 Cal. App. 4th at 645; Copley, 228 Cal. App. 3d at 87-88; Lesher, 224 Cal. App. 3d at 778-779. As the California Court of Appeal explained in Copley, "[i]t is clear that when the [trial] court distribute[s] the questionnaires to the venire persons with instructions to fill them out, voir dire ha[s] begun." Id. at 89 (emphasis added). The fact that jurors are questioned "largely ... in written form rather than orally is of no constitutional import." Copley, 228 Cal. App. 3d at 89. Thus, "[t]he questionnaire is part of voir dire itself," and presumptively open to the public and press. Lesher, 224 Cal. App. 3d at 778. The Second Circuit Court of Appeals has agreed, citing Press-Enterprise for the proposition that the public and press had a right of access to jury questionnaires in a high-profile

---

[4] See also Oregonian Publ. Co. v. United States District Court, 920 F.2d 1462, 1466 (9th Cir. 1990) (materials related to plea bargains are presumptively open to the public, and cannot be sealed without meeting the constitutional test); Foltz v. State Farm Mutual Auto Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003) ("in this circuit, we start with a strong presumption in favor of access to court records"); San Jose Mercury News, Inc. v. United States District Court, 187 F.3d 1096, 1102 (9th Cir. 1992) (public's common law right of access in civil cases "creates a strong presumption in favor of access"); California ex rel. Lockyer v. Safeway, Inc., et al, 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2005) ("historically our nation has viewed what transpires in the courtroom as public property"; citing NBC Subsidiary, 20 Cal. 4th at 1198).

trial involving boxing promoter Don King. U.S. v. King, 140 F. 3d 76 (2d Cir. 1998). See also Application of The Washington Post, 1992 WL 233354 (D.D.C. July 23, 1992) (holding that the First Amendment granted public a right of access to completed jury questionnaires); U.S. v. McDade, 929 F. Supp. 815, 817 n.4 (E.D. Pa. 1996) (recognizing First Amendment right of access to voir dire extends to written questioning of prospective jurors); U.S. v. Wecht, 537 F.3d 222 (3d Cir. 2008) (finding that the public, as a matter of constitutional right, are entitled to the names of all of the prospective and trial jurors prior to the empanelment of the trial jury).

## III.

### THE NECESSARY ON-THE-RECORD FINDS JUSTIFYING SEALING OF THE COMPLETED JUROR QUESTIONNAIRES CANNOT BE MADE IN THIS CASE

Because the constitutional rights of access attach to these materials, public access is mandated unless the Court has made a specific, on-the-record finding that sealing is necessary to protect an "overriding interest based on findings that closure is essential to preserve higher values." Press-Enterprise I, 464 U.S. at 510. The court also must determine that there are no alternatives to the sealing order; assuming that these high hurdles can be satisfied, any sealing order must be "narrowly tailored to serve that [specific] interest." Id.[5] See also Copley, 228 Cal. App. 3d at 84; Lesher, 224 Cal. App. 3d at 777. As the California Court of Appeal noted, if the court does not consider "alternatives to closure, the trial court [can] not constitutionally" seal the questionnaires in their entirety. Copley, 228 Cal. App. 3d at 85.

Here, there is no valid basis for keeping the public in the dark about the answers provided by prospective and trial jurors. It does not appear that either the prosecution or the defense made a motion for a sealing order with respect to the completed juror questionnaires. Furthermore, the Court's order sealing the completed questionnaires does not provide any justification, let alone a

---

[5] In its discussion of voir dire, the United States Supreme Court indicated that restricting public access in any manner would be appropriate only if a prospective juror had "affirmative[ly]" requested that a particular answer be kept private, and then only if the other constitutional standards had been satisfied. 464 U.S. at 510. In the event that all the tests were met, the Supreme Court twice suggested that a trial court should consider withholding the name of any prospective juror who seeks privacy protection for a particular response while "disclos[ing] the substance of the sensitive answers." Id. at 513.

compelling one, for refusing to allow public inspection of the questionnaires.[6] For these reasons alone, the Press Organizations respectfully request that the Court release all written juror questionnaires upon completion by the prospective jurors.

Even assuming, however, solely for sake of argument, that any juror affirmatively would request that a particular answer be kept secret, this Court nonetheless must find that the juror's asserted privacy interest outweighs the public's presumptive right of access to the answer, and then must issue a sealing order that is narrowly tailored to protect that particular interest. As one California Court of Appeal instructed, "[t]he First Amendment of the United States Constitution guaranteeing public access to judicial proceedings overwhelms any countervailing privacy interests of prospective jurors as to the content of the questionnaires they complete." Bellas, 85 Cal. App. 4th at 638-39. Moreover, the fact that a case involves a "prominent defendant" does not make "the prospective jurors' hypothetical privacy concerns more compelling than usual." U.S. v. Wecht, 537 F.3d at 240. Nor is the prospect that the press might publish background stories about the jurors "a legally sufficient reason to withhold the jurors' names from the public," a principle which applies by logical extension to juror questionnaires. Id. See also In re Globe Newspaper Co., 920 F.2d 88, 97 (1st Cir. 1990) ("Globe Newspaper III") (stating that "personal preferences of the jurors and the judge's distaste for exposing them to press interviews" is not enough to outweigh the benefits of public access).[7] The Supreme Court has stated that juror privacy rises to the level of a "compelling" interest only when "interrogation touches on deeply personal matters that [the prospective juror] has legitimate reasons for keeping out of the public

---

[6] Local Rule 79-5 (which applies to criminal proceedings pursuant to Local Criminal Rule 55-1) also requires an application to the Court for documents to be filed under seal by the parties. No such application was made here.

[7] The Globe III court further explained that public access to juror information could assist inquiry into whether the jurors were selected from only a narrow social group, or from persons with a certain political affiliation or from those associated with organized crime. 920 F.2d at 94. Further, the court stated that access serves to educate the public regarding the judicial system aids public discourse on how to improve the process, assists in uncovering juror bias or confusion, and could serve to deter intentional misrepresentations. Id. In short, as the Globe III court recognized, access to jury questionnaires helps to verify the impartiality of key participants in the administration of justice and thereby promotes public confidence in the fairness of that system. Id.

domain." Press-Enterprise I, 464 U.S. at 511. This case does not involve such "deeply personal matters"; in fact, the juror questionnaire approved by the Court does not include any questions of a deeply personal nature (such as the personal questions about rape in Press-Enterprise I that still did not amount to a compelling interest justifying secrecy). See id.

Because the First Amendment supports a right of access to the juror questionnaires and because no compelling interest exists to keep these court records from public view, the Court should vacate its closure order and enter a new one granting access to these records.

## IV.

## CONCLUSION

For all the reasons set forth above, the Press Organizations respectfully request that this Court immediately vacate its order sealing juror questionnaires and instead provide for their immediate and concurrent release upon completion by the prospective jurors.

DATED: February 26, 2009

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
THOMAS R. BURKE
DUFFY CAROLAN
JEFF GLASSER

By: _____
Duffy Carolan

Attorneys for Non-Party News Organizations
THE ASSOCIATED PRESS, ESPN, HEARST CORP., THE NEW YORK TIMES COMPANY, KNTV TELEVISION, INC., NBC SUBSIDIARY (KNBC-TV), INC., and LOS ANGELES TIMES COMMUNICATIONS, LLC

# DECLARATION OF DUFFY CAROLAN

I, Duffy Carolan, declare as follows:

1. I am a partner of the firm Davis Wright Tremaine LLP, counsel of record for the Press Organizations in the above-referenced action and am licensed to practice law before all courts in California. I have personal knowledge of the matters stated in this declaration and could and would competently testify to them if called as a witness.

2. On February 25, 2009, at about 11 a.m., I called and left a message with the Court's clerk, Tracy Sutton. I informed Ms. Sutton of the Press Organizations' desire to file an ex parte application for an order vacating that part of the Court's February 19, 2008 order sealing the completed juror questionnaires. I inquired whether the Court would prefer that such an application be calendared along with the Court's regular law and motion calendar at 11 a.m. on Friday, February 27, 2008, or at a time that same day when the parties were scheduled to appear before the Court.

3. Later in the day, about 5:20 p.m., I called Ms. Sutton again and told her that I had learned from the prosecution that the parties were to appear before the Court at 10:15 a.m. on Friday, February 27, 2009. I asked that she return my call and let me know if the Court would prefer that I schedule the ex parte application for hearing at this specially scheduled time or at 11 a.m. on Friday, assuming availability, in conjunction with the Court's regular law and motion calendar for criminal matters.

4. The Press Organizations are moving ex parte and would like to be heard before jury selection begins on Monday, March 2, 2009, so that's its position will be conveyed to the Court in advance of any representations by the Court to prospective jurors regarding confidentiality over the completed questionnaires that prospective jurors may rely on when completing them.

5. On February 25, 2009, at about 4:40 p.m., I called and left a telephone message with AUSA Jeffrey David Nedrow regarding the Press Organizations' intent to move ex parte for an order unsealing completed juror questionnaires and vacating the Court's order entered on

10

February 24, 2008, to the extent that order directs the sealing of the juror questionnaires once completed. I left my contact information.

6. AUSA Jeffrey David Nedrow and AUSA Matthew A. Parrella returned my call at 5:00 p.m. that same day. Mr. Nedrow and Mr. Parrella informed me that the Court had vacated the Friday hearing at 2 p.m. and instead has ordered the parties to appear at a hearing on Friday, January 27, 2009, at 10:15 a.m. I informed them that the Press Organizations were trying to schedule a hearing on its ex parte application on Friday, January 27, 2009, and would be attempting to schedule that hearing either at 11 a.m. in conjunction with the Court's regular law and motion calendar or at the specially set time of 10:15 a.m., when the parties are next scheduled to appear before the Court. I informed Mr. Nedrow and Mr. Parella that we would be filing the ex parte papers tomorrow, Thursday, February 26, 2009, via the Court's e-filing system, if possible, or, alternatively, via email to all of the parties, with hand service on the Court.

7. Mr. Nedrow and Mr. Parrella said that, presently, the government would take no position on the Press Organization's motion.

8. On Wednesday, February 25, 2009 between 2 p.m. and 4:30 p.m. I called and left messages with defense counsel Cristina C. Arguedas, Michael Logan Rains and Allen Rudy, though I believe my message to Mr. Ruby was cut-off. I informed them of the Press Organizations' intent to move ex parte for an order unsealing the completed juror questionnaires and of its intent to file papers on Thursday February 26, 2009, in advance of a Friday hearing either at 11 a.m., in conjunction with the Court's regular law and motion calendar, or at 2 p.m., when I understood the parties would be appearing before the Court.

9. On Wednesday, February 25, 2009, about 5:15 p.m. I receive a return call from Mr. Rudy and informed him or the Press Organization's intent to move ex parte for hearing on Friday at either the 11 a.m. calendar or at 10:15 a.m., when the parties are to appear before the Court. I told him that I was waiting to hear back form the clerk, Tracy Sutton, as to whether the Court would hear from the Press Organization on the ex parte application and, if so, when. He informed me that service of any ex parte papers via email on him and other defense counsel would

be sufficient service, should I be unable to e-file document in the case, and that my calls to Ms. Arguedas and Mr. Rains were sufficient notice to defendant of an intent to move ex parte.

10. At about 8:30 a.m. on Thursday, February 26, 2009, I talked to the Court's clerk Tracy Sutton about this ex parte application and the underlying motion and about my attempts to notice counsel on the matter. She advices that I file the papers as soon as possible and appear along with the parties at 10:15 a.m. on Friday, at which the time Court would decide whether to take up the matter.

11. At about 10:15 a.m. on Thursday, February 26, 2009, I caused to be served on all the parties in this action via email and fax the instant ex parte papers and underlying motion. Hand copies were also sent to the Court for filing as we had not been able to obtain authorization from the Court to file electronically in the case.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26 day of February, 2009, in San Francisco, California.

By _____
Duffy Carolan

# Proof of Service

1  
2   I, Dann R. Rhone, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

3   I am employed in the City and County of San Francisco, State of California, in the office of a member of the bar of this court, at whose direction the service was made. I am over the age of eighteen (18) years, and not a party to or interested in the within-entitled action. I am an employee of DAVIS WRIGHT TREMAINE LLP, and my business address is 505 Montgomery Street, Suite 800, San Francisco, California 94111-6533.

I caused to be served the following document:

**EX PARTE APPLICATION FOR ORDER SHORTENING TIME TO HEAR MOTION TO VACATE ORDER SEALING COMPLETED JUROR QUESTIONNAIRES AND FOR IMMEDIATE AND CONCURRENT ACCESS TO COMPLETED JUROR QUESTIONNAIRES; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DUFFY CAROLAN**

I caused the above document to be served on each person on the attached list by the following means:

☐ I enclosed a true and correct copy of said document in an envelope and placed it for collection and mailing with the United States Post Office on November 21, 2008, following the ordinary business practice.
*(Indicated on the attached address list by an [M] next to the address.)*

☐ I enclosed a true and correct copy of said document in an envelope, and placed it for collection and mailing via Federal Express on February 26, 2009, for guaranteed delivery on April 9, 2004, following the ordinary business practice.
*(Indicated on the attached address list by an [FD] next to the address.)*

☒ **I consigned a true and correct copy of said document for facsimile transmission on February 26, 2009.**
*(Indicated on the attached address list by an [F] next to the address.)*

☒ **I consigned a true and correct copy of said document for transmission via Electronic Mail on February 26, 2009.**
*(Indicated on the attached address list by an [E] next to the address.)*

☐ I enclosed a true and correct copy of said document in an envelope, and consigned it for hand delivery by messenger on April 7, 2004.
*(Indicated on the attached address list by an [H] next to the address.)*

I am readily familiar with my firm's practice for collection and processing of correspondence for delivery in the manner indicated above, to wit, that correspondence will be deposited for collection in the above-described manner this same day in the ordinary course of business.

Executed on February 26, 2009, at San Francisco, California.

_____
Dann R. Rhone

1

DWT 12511787v1 0025295-000002

## Service List

| Key: | [M] Delivery by Mail | [FD] Delivery by Federal Express | [H] Delivery by Hand |
|---|---|---|---|
| | **[F] Delivery by Facsimile** | [FM] Delivery by Facsimile and Mail | **[E] Delivery by E-Mail** |

                                                Attorneys for

[F]   Michael Walter Anderson         **Defendant**
[E]   Arguedas, Cassman & Headley, LLP
      803 Hearst Avenue
      Berkeley, CA 94710
      510-845-3000
      510-845-3003 (fax)
      anderson@achlaw.com

[F]   Cristina C. Arguedas
[E]   Arguedas, Cassman & Headley, LLP
      803 Hearst Avenue
      Berkeley, CA 94710
      510-845-3000
      510-845-3003 (fax)
      arguedas@achlaw.com

[F]   Ted W. Cassman
[E]   Arguedas, Cassman & Headley, LLP
      803 Hearst Avenue
      Berkeley, CA 94710
      510-845-3000
      510-845-3003 (fax)
      cassman@achlaw.com

[F]   Donald Meredith Horgan
[E]   Riordan & Horgan
      523 Octavia Street
      San Francisco, CA 94102
      415-431-3472
      415-552-2703 (fax)
      don@riordan-horgan.com

[F]   Michael Logan Rains
[E]   Rains, Lucia & Wilkinson LLP
      2300 Contra Costa Blvd.
      Suite 230
      Pleasant Hill, CA 94523
      925-609-1699
      925-609-1690 (fax)
      mrains@rlwlaw.com

| | | |
|---|---|---|
| [F]<br>[E] | Dennis Patrick Riordan<br>Riordan & Horgan<br>523 Octavia Street<br>San Francisco, CA 94102<br>415/431-3472<br>415/552-2703 (fax)<br>dennis@Riordan-Horgan.com | |
| [F]<br>[E] | Allen Ruby<br>Law Offices of Allen Ruby<br>125 South Market Street, Suite 1001<br>San Jose, CA 95113<br>408-998-8500<br>408-998-8503 (fax)<br>ruby@allenrubylaw.com | |
| [F]<br>[E] | Jeffrey R. Finigan<br>U.S. Attorney's Office<br>450 Golden Gate Avenue<br>11th floor<br>San Francisco, CA 94102<br>(415) 436-7200<br>(415) 436-7234 (fax)<br>jeffrey.finigan@usdoj.gov | USA |
| [F]<br>[E] | Jeffrey David Nedrow<br>United States Attorney's Office<br>NDCA, San Jose Division<br>150 Almaden Blvd., Suite 900<br>San Jose, CA 95113<br>408-535-5045<br>408) 535-5066 (fax)<br>jeff.nedrow@usdoj.gov | |
| [F]<br>[E] | Matthew A. Parrella<br>US Attorney's Office<br>150 Almaden Blvd., Suite 900<br>San Jose, CA 95113<br>408-535-5061<br>408-535-5066 (fax)<br>matthew.parrella@usdoj.gov | |
| [F]<br>[E] | J. Douglas Wilson<br>United States Attorney<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br>415-436-6885<br>415-436-7234<br>Doug.Wilson@usdoj.gov | |

DWT 12511787v1 0025295-000002